# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## DECEMBER SPECIAL TERM, 1899.

---

### COATS & SONS *v.* BACON & CO.

1. CONTRACT. *Writing. Parol evidence to vary.*

    In the absence of fraud parol evidence is inadmissible to vary the terms of a written contract.

2. SAME. *Inattention in signing.*

    Inattention to the contents of a written contract when signing it, affords, in the absence of fraud, no defense to a suit upon the contract as written.

FROM the circuit court, second district, of Carroll county.

HON. W. F. STEVENS, Judge.

Coats & Sons, appellants, were the plaintiffs in the court below; Bacon & Co., appellees, were defendants there. The suit was based upon an open account for $180 worth of needles. Bacon & Co. were merchants at Vaiden, in this state, and Coats & Sons were manufacturers of needles at Reddich, England. The manufacturers, from their New York office, addressed a communication to Bacon & Co. extolling the quality of their products, advising that they had changed their mode

of selling needles by the thousand, substituting therefor the
sale of them by the card, each card containing a paper of needles
of the desired size, and seven large darning needles, proposed
to print free upon the card such advertising matter as might be
directed, and after commending the advantages to accrue to
their customers from the new scheme and the advertisement,
concluded with a request that Bacon & Co. purchase needles
from them. They inclosed with their communication a blank
order sheet, asking Bacon & Co. to fill up the blanks, sign, re-
turn, etc.

Bacon & Co. complied with the request, filling up the blanks
so as to order 6,000 cards of needles, giving six different sizes
of needles as desired, 1,000 of each size; and they were not
forgetful of directing a very attractive advertisement of their
business to be placed on the cards.

Upon receipt of this order Coats & Sons wrote to Bacon &
Co. acknowledging its receipt, advised their understanding of
it by copying the same into their letter, asked that it be checked
over carefully, and any correction desired made.

At the foot of this letter Bacon & Co. wrote: "We have
checked this all over carefully, and find it correct in every par-
ticular," signed their names thereto, and returned it to Coats
& Sons. The needles, 192,000 of them, besides 42,000 darning
needles, 6,000 cards of needles with the purchaser's advertise-
ment on each card, were shipped by Coats & Sons to Bacon &
Co., and in due time reached Vaiden, but the consignees re-
fused to receive them from the carrier, claiming that they had
intended to order only 6,000 needles, and had no use for the
immense number sent them. They ordered the carrier to re-
turn them to the consignors. What became of the needles does
not appear in the record, but Coats & Sons refused to retake
them.

In the trial of the case in the circuit court defendants, over
the objection of the plaintiffs, were permitted to testify as to
their intentions in executing and their understanding of the

meaning of the writings, to state that they only read parts of the documents, and that the general custom was to buy needles by the thousand, and not by cards.

The verdict and judgment of the court below was for the defendants, and plaintiffs appealed.

*C. L. Simpson,* for appellants.

Written contracts cannot be changed by parol testimony. The law on this proposition is so clear, and it has been decided so many times that in general oral evidence is not admissible to vary the terms of a written contract, that we refrain from citing authorities. But in the case at bar, counsel for appellees claim, and the trial judge in his ruling held, that oral testimony was admissible to change the terms of the contract, or, as the judge expressed it, to explain the intention of the appellees in making the order. The trial judge, over the objection of the appellants, allowed D. W. Bacon, the member of the firm of Bacon & Co. who made the order, to testify how many needles he intended to order. This was clearly wrong. The judge gave as a reason for his ruling, that there could be no contract unless the minds of the parties met. In principle this proposition is sound, but there are certain rules by which it must be applied. Of course, where there has been fraud, falsehood or duress practiced by either party, there can be no meeting of the minds, and hence no contract. But for a mere mistake made by one party to the contract, where the other party has acted throughout in good faith, the law will not excuse the party sought to be held. The law is well settled that a man is bound by an agreement to which he has expressed his assent in unequivocal terms, uninfluenced by falsehood, violence or oppression. And under the same circumstances ignorance of some stipulation in the contract is no ground for setting it aside, the mistake of the party being due to his own carelessness or inattention.

The law judges of an agreement between two persons exclusively from those expressions of their intentions which are

communicated between them, and the acceptance of an order without objection or condition binds the party accepting; and the party making the offer has the right to understand that the acceptance was according to the terms of the offer. Lawson on Contracts, sec. 206.

The appellants acted throughout in perfect good faith. There can be shown no fraud, falsehood or duress on their part. If any mistake was made, it was on the part of Bacon & Co. If D. W. Bacon did in fact order 6,000 cards of needles, when in his mind he only intended to order 6,000 needles, such mistake was made by him, and him alone, and it was due to his own carelessness and inattention; for before appellants would fill appellees' original order they sent back a confirmatory letter to be checked over and returned with corrections, if any were necessary to be made. The court therefore erred in admitting the evidence of Mr. Bacon to vary or explain the terms of the written contract; but should have construed the terms of the contract, and if the written contract shows that Bacon ordered 6,000 cards of needles, the judgment of the court should have been that appellants recover their value as stated in the account.

*McClurg & Flowers,* for appellees.

The sole issue in the trial court was, whether there was in fact a contract. The testimony will convince the court of the correctness of this statement. We believe the record will also thoroughly support the statement that there was no effort, purpose or intention on the part of the defendants, appellees here, to vary the terms of the contract, if in fact there was one. The testimony throughout the case was to the issue joined—no contract, because there had been no agreement, no meeting of minds by the contracting parties concerning the same subject-matter.

There was an absence of all consent by the defendants to purchase 192,000 needles; hence, there was no contract at all, for the plaintiff was selling 192,000 needles. "The parties," says

Mr. Lawson, in his work on Contracts, sec. 211, "must assent to the same thing in the same sense. Mistakes of this kind go, not to avoid the contract, but to show that there is no contract at all." It was a mistake as to the subject-matter of the contract.

"Where A agrees with B concerning one thing, thinking that B is referring to that, while B agrees with A concerning another thing, and thinks that A refers to that other thing, there is no contract, 'for there is a mistake in the identity of the thing contracted for; the minds of the parties never really met, and there is no true consent." Lawson, p. 242, sec. 214. And he may repudiate it and successfully defend an action brought upon it. *Ibid.,* sec. 215.

Whitfield, J., delivered the opinion of the court.

The letter from appellants to appellee of date August 9, 1898, taken with the indorsement thereon by appellee, "we have checked this all over carefully, and find it correct in every particular," completed the contract, which, being thus in writing, could not be changed in its terms by parol. Proof of fraud would set aside the contract, but there is no such proof in this record. Appellees should have read carefully the letters of appellants, and to indorse in the unqualified terms they did the proposed contract, without reading it carefully, is simply gross inattention. To permit the parol proof objected to in this case to be heard in evidence, would be to make a contract for the parties, not to enforce the contract which they have themselves made. It was error to admit such parol proof.

*Reversed and remanded.*