HARTFORD ACCIDENT & INDEMNITY Co. *v.* NATCHEZ INV. Co.

(Division B. Dec. 3, 1928.)

[119 So. 366. No. 27293.]

32

Wells, Stevens & Jones, of Jackson, for appellant.

42

Green, Green & Potter, of Jackson; Martin & Byrnes; Bradley, Baldwin, All & White, all of Birmingham, Ala., for appellee.

Kennedy & Geisenberger, of Natchez, for appellees.

Brandon & Brandon, of Natchez, for appellees.

Argued orally by **Gerard H. Brandon, Garner W. Green** and **Beekman S. Laub**, for appellees.

**Ethridge, J.,** delivered the opinion of the court.

(After stating the above facts.)   Section 1 of chapter 128, Laws  of  1918  (Hemingway's  1927 Code,  section

2596), amends section 3074, Code of 1906, giving to sub-contractors, laborers, etc., the right to bind the amount due the contractor by written notice provided for in said section, and, when such notice is given, the funds then due by the builder to the contractor are impounded in favor of such materialmen, subcontractors, laborers, etc. By section 2 of chapter 128, Laws of 1918, (Hemingway's 1927 Code, section 2597) it is provided that "no contractor or master workman except as hereinafter provided shall have the right to assign, transfer or otherwise dispose of in any way, the contract or the proceeds thereof, to the detriment or prejudice of the subcontractors, journeymen, laborers, and materialmen as declared hereinbefore and all such assignments, transfers, or dispositions shall be subordinate to the said rights of the subcontractors, journeymen, laborers and materialmen as well as the owner. Provided, however, that this section shall not apply to any contract or agreement where the contractor or the master workman shall enter into a solvent bond conditioned as provided for in section 3 hereof."

It will be seen from a study of these two sections that the legislature has provided a lien upon funds due the contractor by the builder in favor of laborers, journeymen, subcontractors, and materialmen. When the conditions of the statute are complied with, the builder is obliged to hold, for the purpose of paying or satisfying these claims, at least to the extent that such funds due the contractor by him will pay them; and, if such funds are insufficient to pay them in full, they shall be pro-rated. In practically all of the states, such liens are in force, and are upheld as valid regulations of contract rights by the legislature. A giving of liens in favor of those who have performed labor or furnished material which is used in a building where the builder has not, prior to such notice, paid out the contract price, is universally upheld. Such sections are in furtherance of

a wise public policy, designed to protect people whose labor and material have been furnished to the contractor for use in the building constructed by him for a third person.

As we understand this, section 1 is in nowise challenged as being within the competence of the legislature to enact, but section 2 of the act is challenged as impairing the right of a contractor to make contracts and to receive the price therefor, and dispose of it, as he sees proper, as a necessary incident to the protection of his business. Of course the section does not prohibit the subcontractors, journeymen, laborers, and materialmen from waiving such right or entering into contracts by which such rights are waived or otherwise provided for, but it does give rights to the subcontractors, journeymen, and laborers and materialmen against the funds due the principal contractor for the protection of their contracts with him, and in furnishing labor and material in carrying out his contract. The legislature has the power to regulate the right of contract in a reasonable manner, so long as the right to contract is not destroyed or seriously impaired. The effect of the statute before us in the case named is similiar to impounding money due to one person by a process of garnishment to the satisfaction of the claims of another person against the owner of such funds, and it has always been, as we understand it, permissible for the legislature to provide remedies to parties furnishing labor and material, or in selling property, by providing liens or other proceedings impounding the property or its proceeds.

The contractor making a contract with subcontractors, journeymen, laborers, materialmen, has no constitutional right to be free from the obligation of paying them, nor has he the right to claim the proceeds derived from the builder under his contract, free from the claim of the laborers, subcontractors, journeymen, and ma-

terialmen with whom he has contracted, and whose material or labor he has secured in the performance of his own contract. We see no difference in principle in providing the security given by section 2 to such subcontractors, journeymen, laborers, and materialmen from that given by law in section 1 of the statute. We recognize the difference in the power of the legislature to deal with contracts made by public bodies, such as the state, county, or municipality, or other agencies of the public, and the right to regulate contracts made between private individuals. In case of public bodies and public corporations, being agencies of the state, acting for its purposes, and having such powers only as the state confers upon them, the state has, in the absence of constitutional restriction, a plenary right to prescribe the terms and conditions of public contracts, or contracts of public boards, or municipalities, and parties dealing with such powers or agencies of the state deal with them in the light of the law giving them power and imposing restrictions upon their right of contract. But, in the case of individuals, the legislature had no such plenary right. The citizen has the liberty of contracting, which cannot be entirely destroyed by the state, except in given circumstances deemed necessary for the protection of the public. In the case of private contracts, the legislature can only impose reasonable regulations and restrictions, etc., and cannot entirely take away the right, nor deny it to such an extent as to substantially destroy the right. However, its power to regulate contracts and provide conditions under which they can be made and enforced is quite large, and it is a delicate question to draw any precise limitation upon such right. We do not think section 3 of chapter 128 of the Laws of 1918 goes beyond the constitutional limit in this record. This section does not prohibit parties from making reasonable contracts; it does not require the bond therein pro-

vided for to be executed by the parties; nor does it prohibit them from taking other kinds of bonds or contracts of a reasonable nature in conducting their business of contracting. The section provides that: "When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, *shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein,* such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract," etc.

This bond comes into operation when the parties enter into the kind of contract and the kind of bond provided for in the section, and does not intend to prevent the parties from making other and different contracts and bonds; but, if a bond is not given, as provided for in section 3 of the statute, then sections 1 and 2 continue in force for the benefit of the materialmen, subcontractors, journeymen, and laborers, and they have the full right to protect their interests in accordance with the terms of these sections. If the parties desire to be freed from the operation of sections 1 and 2, they may execute the bond provided for in section 3, and, when that is done, the contractor and owner, or builder, are freed from the provisions of sections 1 and 2, and the bond given stands in lieu or instead of the securities provided for in such sections, and operates for the benefit, not only of the contractor and the builder, but for such other persons as well.

Does the bond given in the present case come within the provisions of section 3? In other words, is it such a bond as is provided for therein?

In determining this question, we are to construe the bond in the light of the contract which the bond refers to, and, in so doing, it will appear that the parties intended to execute the bond provided for and required by the contract between the owner and contractor, and, by reference to the quoted provisions in the statement of facts, it will be seen that the contractor was required to give such a bond as was called for by section 3 of the act; and we think it was the intention of all the parties to give the bond therein provided for, and that the bond is to be construed in connection with the contract; it was designed to protect the owner and contractor, and that it was so dealt with by all parties. It will be seen from a recital of the bond itself that it referred to the contract, and to the plans and specifications made a part of the contract and the bond. This being true, it is plain we think that it was the intention and purpose of the parties to execute a bond in conformity with section 3 of the act above quoted.

This brings the case within the decision rendered in the case of U. S. F. & G. Co. v. Parsons et al., 147 Miss. 335, 112 So. 469, 53 A. L. R. 88, and that case controls the present case. Consequently it is manifest that the contractor was free to make assignments of the amount due, and that the amount assigned to the bank was a valid assignment, freed from the claims of the subcontractors, journeymen, laborers, and materialmen.

We do not think the cases relied on, construing chapter 217, Laws of 1918, which provides for the bonds and the securities of people who furnish labor and material for public works, have any controlling force in the present case. As stated above, no constitutional question arises as to the power of the legislature to dictate the terms and conditions of public contracts, and the necessary conditions and requirements deemed by the legislature to be proper in such cases.

The judgment of the court below will be affirmed, and the case remanded, for further proceedings in accordance with this opinion.

Affirmed and remanded.

Hɪʟʟ Cɪᴛʏ Cᴏᴍᴘʀᴇss Co. *v.* Wᴇsᴛ Kᴇɴᴛᴜᴄᴋʏ Cᴏᴀʟ Co. *et al.*

(Division B. June 3, 1929. Suggestion of Error Overruled June 28, 1929.)

[122 So. 747. No. 27845.]

