HARTFORD ACCIDENT & INDEMNITY CO. *v.* NATCHEZ INV. CO., INC., *et al.*

(Division B. Feb. 23, 1931.)

[132 So. 535. No. 28877.]

**Wells, Jones, Wells & Lipscomb,** of Jackson, **Arthur G. Powell,** of Atlanta, Ga., and **Wallace Stevens,** of Hartford, Conn., for appellant.

Wells, Jones, Wells & Lipscomb, of Jackson, for appellant.

G. Garland Lyell, of Jackson, and Engle & Laub, of Natchez, for appellees.

Engle & Laub, Brandon & Brandon, Kennedy & Geisen-
berger and E. H. Ratcliff, all of Natchez, for appellees.

Brandon & Brandon and **E. H. Ratcliff**, all of Natchez, for appellees.

W. C. Martin and Martin, Byrnes & Meyer, all of Natchez, Bradley, Baldwin, All & White, all of Birmingham, Ala., and Green & Green, of Jackson, for appellees.

Argued orally by **Arthur G. Powell** and **L. Barrett Jones**, for appellant, and by **S. C. Laub, W. A. Geisenberger, Gerard Brandon** and **Garner Green**, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

This is the second appeal of this cause, the decision in the first appeal being reported in 155 Miss. 31, 119 So. 366, on which appeal a statement of the case as it had then developed was made. The constitutionality of chapter 128, Laws of 1918, was upheld, and the contract between the Hartford Accident & Indemnity Company and the Natchez Investment Company, Inc., was construed and the bond held to be a bond in accordance with the provisions of section 3, chapter 128, Laws of 1918.

On a remand of the cause to the court below the various materialmen who had furnished material for the building, and others who had advanced money to the Natchez Investment Company, or to the contractor upon a note given by that company, propounded claims against the appellant, Hartford Accident & Indemnity Company, setting forth their claims and praying judgment for the amount thereof against the Hartford Accident & Indemnity Company and contractors, and also for interest upon the said claims and for attorneys' fees incurred in propounding and litigating their claims. A cross-bill was filed against Hartford Accident & Indemnity Company and the contractors, the suit having been filed as a concursus proceeding by the Natchez Investment Company, Inc., for the benefit of all such persons, and such persons being made defendants to that bill.

Among the provisions of the contract between the contractors and the Natchez Investment Company, Inc., for the building of the hotel, was a provision stating that the owners should make payments on account of the contract, as provided therein, on or about the 1st and 15th day of each month, the value, based on the contract price,

of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the 1st and 15th day of each month, as estimated by the architects, less the aggregate of previous payments. It was also provided in the contract that the contractor should furnish and pay for all materials and labor used in the construction of the building.

On the hearing in the court below agreed statements of facts were entered into between the Hartford Accident & Indemnity Company and the several materialmen whose claims were propounded in the said proceeding. These agreements are practically and substantially alike, and, in effect, agree that on the 18th day of October, 1926, the Natchez Investment Company, Inc., entered into contract with J. V. and R. T. Burkes of New Orleans, Louisiana, for the construction of a hotel according to plans and specifications known as project No. 640 of Weiss, Dreyfous & Seiferth, Inc., and that the Burkes entered upon the construction of the hotel. That the materials claimed by the several claimants were actually furnished to the Burkes, the contractors, and that the amount of them was correct, and that the prices were fair and reasonable, and the balance due, shown in the claim, was unpaid by J. V. and R. T. Burkes, and that they went into the hotel building. The agreements reserved the question as to whether an attorney's fee was due and payable to the claimants, and also whether interest was due and payable; also agreed that demand had been made upon the Natchez Investment Company for the payment of the said sums of money.

The bond of the appellant contained, among other things, the following clauses:

"1. The obligee shall, at the times and in the manner specified in the contract, fully comply with all the terms thereof, and if the obligee default in the performance of any matter or thing agreed or required in this bond, or in the contract, the surety shall thereupon be relieved of all liability hereunder.

"3. If at any time there come to the notice or knowledge of the obligee information that any claim for labor performed or for materials furnished the principal in or upon the work specified in the contract remains unpaid, or that any lien or notice of lien for such work or materials has been filed or served, the obligee shall withhold from the principal payment of any moneys due or to become due to the principal under the contract until the payment of such claim or discharge of such lien or notice of lien, and will so notify the surety, giving a statement of the particular facts and amount of each such claim lien or notice of lien.

"4. If any changes or alterations by the principal or obligee shall be made in the plans or specifications for the work described in the contract, the obligee shall immediately notify the surety thereof, giving a description and stating the amount of money involved by such changes or alterations. Provided, however, that should the cost of such changes or alterations in the aggregate amount to a sum equal to ten per cent of the penal sum of this bond, no further changes or alterations shall be made by the principal or obligee until the consent of the surety shall first be obtained thereto.

"8. None of the conditions or provisions contained in this bond shall be deemed waived or altered by the surety unless the written consent to such waiver or alteration be duly executed by its authorized officers and its seal be duly affixed thereto; nor shall the obligee consent to an assignment of the contract or any part thereof without the express consent of the surety duly executed and attested as aforesaid; nor shall this bond or any rights thereunder be assignable except with the consent of the surety duly executed and attested as aforesaid."

It was also provided in paragraph 7 of the bond that the surety shall not be liable unless the contract was paid in cash; and, under paragraph 11, the obligation

of the surety should be construed strictly as one of suretyship only, and should not be for the benefit of any person other than the named obligee.

The contract between J. V. and R. T. Burkes, the principal in the bond, and the Natchez Investment Company, Inc., was for the price of three hundred sixteen thousand eight hundred twenty-two dollars, exclusive of extras, and provided that payment was to be made in current funds. The Natchez Investment Company, Inc., floated a bond issue with which to erect the building, but the proceeds thereof had to be supplemented by individual funds of the company. The bond issue netted about two hundred eighty thousand dollars. After the work started, and the contractors became entitled to their first estimate, instead of being paid in cash or in current funds, the contractors were given notes aggregating thirty-eight thousand dollars. These notes were assigned to banks and money procured from the banks by J. V. and R. T. Burkes, and the funds so obtained were used in paying for labor and material that went into the building. The notes so given were extended to them as of payment. It appears that J. V. and R. T. Burkes owed the bank, to which the thirty-eight thousand dollars worth of notes was disbursed, sums of money and procured an additional credit with the bank in the sum of fifteen thousand dollars. It was understood between the Natchez Investment Company, Inc., and the contractors, J. V. and R. T. Burkes, that the giving of the notes did not extinguish the lien that the contractors had upon the building, and this seems to have also been understood by the bank to which the notes were assigned. The appellant, Hartford Accident & Indemnity Company, was not consulted about this transaction and its consent thereto was not obtained. An arrangement was also made by the Natchez Investment Company, Inc., and by the Burkes with certain other materialmen, who had sold material to the Burkes to go into the hotel building, to

accept the notes of the Natchez Investment Company for the amount of their claims, with an understanding that their lien would not be released against the hotel property by taking the notes of the Natchez Investment Company, the owner thereof. This arrangement was not consummated with any of the parties furnishing material, except the Williamson-Greer Company, whose claim was for twelve thousand eight hundred fifteen dollars and ten cents. This note was due one year after date and was dated July 1, 1927, and bore interest at six per cent per annum, and provided for attorneys' fees and costs incurred in collecting the same, and recited that it was secured by a lien allowed by law to the payee as to the furnishing of material, labor, and supplies in the construction of the Eola Hotel of Natchez, Mississippi. This note was made payable direct to Williamson-Greer & Company by the Natchez Investment Company, Inc., and J. V. and R. T. Burkes gave credit to the Natchez Investment Company, Inc., for the amount of this note on the contract price. The notes given to J. V. and R. T. Burkes were dated November 10, 1926. One was for twenty-eight thousand eight hundred twenty-three dollars, due February 8, 1927, or ninety days after date, and bore interest at the rate of eight per cent from maturity until paid, and provided for ten per cent additional if placed with an attorney for collection. This note contained no recital of the reserving of the lien upon the hotel property for its payment, and was a negotiable instrument. The other two notes were for five thousand dollars each, dated November 10, 1926, and due ninety days after date, and bore interest at the rate of eight per cent, waived protest and notice of nonpayment, and also provided that the note might be extended without notice and without affecting the liability of any parties thereto, and if the makers should fail in business or become bankrupt, or have filed against them, or any of them, proceedings in involuntary bankruptcy or for the

appointment of a receiver, this note and all other debts and obligations of the maker, direct or contingent, should immediately become due and payable; and that at the maturity of the note, or when otherwise due, as provided, any and all money, stocks, bonds, or other securities or property of any nature whatsoever on deposit with or held by, or in the possession of, said bank, as collateral or otherwise, to the credit or for account of the makers, indorsers, or other parties hereto, or any of them, should be and stand applied forthwith to the payment of this note, or any other indebtedness due said bank by said parties or any of them; and if this note be not paid when due, and it should be placed in the hands of an attorney, that a ten per cent attorneys' fee should be paid. These notes seem to have been made upon a blank form of the New Orleans Bank & Trust Company of New Orleans, Louisiana, to which the notes were assigned by J. V. and R. T. Burkes.

On the hearing the chancellor rendered a decree against J. V. and R. T. Burkes and T. J. Bartlette, trustee in bankruptcy, for J. V. and R. T. Burkes, and Hartford Accident & Indemnity Company. That said bond is a bond guaranteeing the faithful performance of the contract for the erection and construction of the Eola Hotel building in Natchez, Mississippi, and the surety on the bond is liable for the payment of the respective sums set forth, and decreed to be due and owing the creditors, or claimants, set forth in the judgment adjudging the said Hartford Accident and Indemnity Company and J. V. Burkes and R. T. Burkes, jointly liable to the said creditors in the amounts due to each in the sum set forth in the decree, and adjudging interest on the said sums due on the date they were due and at six per cent from the date of judgment until paid. It also adjudged a fee to the attorneys representing the Natchez Investment Company, Inc., in the concursus proceedings in the sum of five thousand dollars. It refused to allow attorneys'

fees to the materialmen who were brought into court and had filed cross-bills seeking to preserve their right for material, but fixed what would be a reasonable fee and made a finding of fact of what would be reasonable in each case, should the liability be adjudicated in favor of the said claimants by the judgment of this court, setting out specifically the amount each claimed. It reserved in the decree the future determination of the claim propounded by N. O. Nelson Manufacturing Company, as assignee of A. W. Moore, doing business as the Acme Engineering Company, who had obtained leave of the court to intervene in the cause as defendant and cross-complainant. It also reserved for future adjudication the claim of New Orleans Bank & Trust Company, which had brought a proceeding in the circuit court to establish a mechanics' lien on the Eola Hotel, and which cause had been transferred to the chancery court.

We are of the opinion that the provisions of the contract for the construction of the hotel and the bond constitute a bond under section 3 of chapter 128, Laws of 1918, and that the bond inures for the benefit of the materialmen who furnished the material that went into the hotel, and that the operation of this law had the effect of writing into the bond provision for the payment of claims of persons furnishing labor or material under the said contract, as though it had been actually written therein, and that none of the provisions of the bond had the effect of writing out of the contract these provisions and could not have that effect. In other words, it is not competent, where the bond is given, as provided by the act, to dispense with these stipulations. All stipulations contrary to the statutory provisions must be disregarded so far as persons furnishing labor or material are concerned.

We are further of the opinion that the bond did not protect the note given by the Natchez Investment, Inc., to the Williamson- Greer Company. Between the Natchez Investment Company, Inc., and the appellant, the Hart-

ford Accident & Indemnity Company, the provisions that payments should be made, as provided in the contract, in cash or current funds, where made, and the statute did not prevent their insertion in the contract. When the Natchez Investment Company, Inc., gave these notes instead of paying cash, and contracted to reserve the lien on the hotel for the benefit of the holders of the notes, it waived its right as against the surety company as to the claims flowing from the notes. By that contract between J. V. and R. T. Burkes and the Natchez Investment Company, Inc., the Burkes, and the assignees of the Burkes, had a negotiable instrument of value against the Natchez Investment Company, Inc., and a right to resort to the hotel building for the satisfaction of that claim, but it had no right, after making this novation, which was done without the consent of the Hartford Accident & Indemnity Company, to charge the indemnity company with the loss occasioned by the failure or bankruptcy of the Natchez Investment Company, and the bankruptcy of J. V. and R. T. Burkes. The parties accepting these notes must look to the security which they accepted in lieu of their rights under the bond against the Hartford Accident & Indemnity Company. Parties taking and accepting the notes of the Natchez Investment Company under such circumstances have no greater rights than their assignors had, and they only succeed to whatever rights the contractor would have against the Natchez Investment Company, Inc., and the hotel, had the notes not been transferred or assigned.

We are of the opinion that the court was correct in allowing five thousand dollars fees to the attorneys instituting the concursus proceeding, and that the court was also correct in denying attorneys' fees to the attorneys representing claimants or materialmen who were brought in or appeared in the suit to propound their claims under the proceedings. The contract and the statute do not contemplate payment of all attorneys who may be em-

ployed, but only a reasonable attorney's fee to the attorneys representing the proceedings known as concursus proceedings. The court was also correct in allowing interest on the claim of the several claimants; such claims bore interest from the date when they were due unless there is a contract to the contrary. This rule generally prevails as to contracts, and no reason is shown as to why it should not be applied in the present case.

It follows from these views that the judgment of the court below is affirmed as to the claims of all persons, except that allowed to Walter Williamson and A. A. Greer, doing business as Williamson-Greer & Company, for fourteen thousand eight hundred thirty-three dollars and forty-two cents which is reversed and the judgment disallowed; and the petition dismissed as to all parties, except the Natchez Investment Company, Inc. Affirmed as to O. L. Bunn; the Coburn Trolley Track Manufacturing Company; Gibbens & Gordon, Inc.; Hockaday, Inc.; the R. C. Lieb Company; Natchez Drug Company; National Show Case Company; Swartz & Stewart; Walter C. Schultz; Southern Cement Company; Truscon Steel Company; White Stone Company, Inc.; Woodward, Wight & Co., Limited; R. Lee Parker, Jr.; R. Scudamore, Jr.; R. Lee Parker, Jr., and R. Hicks Parker, doing business as Natchez Brick Company; C. R. Burkett, doing business as Burkett Sheet Metal Works; W. A. Jacobie; St. Bernard Cypress Company; Geisenberger Bros. Drug Company; M. P. Phelan; Enochs Lumber & Manufacturing Company; Southern G. F. Company; Feltus Bros. Hardware Company; Chamberlain Metal Weather Strip Company; Ingalls Iron Works; Capitol Paint & Glass Company; Mosler Safe & Lock Company. Affirmed as to attorneys' fees allowed in concursus proceedings, and reversed as to Williamson-Greer & Co.

Affirmed, except as to Williamson-Greer Company.

On Suggestion of Error.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

Suggestions of error have been filed on behalf of appellant and of certain appellees which have had the individual consideration of each of the judges of this division, and after such consideration, we have decided that they should be overruled.

On behalf of the appellant, it is earnestly insisted that it was error to allow attorney's fees, that neither the statute nor the bond provided for attorney's fees, and that the allowance of the fee was, therefore, error. In the consideration of the case on the former appeal, reported in 155 Miss. page 31, 119 So. 366, we held that: "When a bond is executed by a contractor in favor of the builder, which refers to a contract between the builder and the contractor, requiring the contractor to execute a bond for the faithful performance of the contract, and provides, in general terms, plans and specifications of the building to be erected and the bond, which reserved to the bonding company the right at its option to take over and finish the contract should the contractor fail, and other rights, such bond will be construed in connection with the contract referred to in the bond and made a part of the bond contract; and, where it is apparent from a consideration of the bond and the contract referred to that it was the intention of the bonding company, the builder, and the contractor to execute the bond required by section 3, chapter 128, Laws of 1918, it will be held to be such a bond."

Turning to the contract between the contractor and the owner, construed in connection with the bond, in article 30 of the contract, it is provided: "It shall be the obligation of every contractor and subcontractor estimating upon work under this contract operation to figure and to include within his bid to furnish a bond in the sum and

conditioned as the law of the State of Mississippi requires, in a surety company satisfactory to the owner or architect; contractor likewise to pay the cost of any required recordation of contract and bond and the cost of any required cancellation of the same. He shall also secure and pay for lien and privilege certificates which will be required of him before final payment is made under this contract. The bond shall also secure the owner the faithful performance of the contract, in strict accordance with plans and specifications, it shall protect the owner against all liens or claims that may be filed against the building according to the laws of the state of Mississippi and shall provide for the payment of reasonable attorney's fees for the enforcement of the contract and the institution of concursus proceedings, if such proceedings become necessary.''

Under the contract which the bond was given to secure, the attorney's fees were provided for expressly, and it must have been within the contemplation of the parties making the bond and the parties looking to it that the bond was given to displace the materialmen's liens given by the statute under sections 1 and 2. But it is said that there is no such proceeding in Mississippi as a concursus proceeding. The contract was drawn in Louisiana where concursus proceedings exist; and it is substantially an interpleader between all parties interested in such proceedings that they may all be brought in court at one time and all rights determined in one suit. The proceeding here is substantially in accord with a concursus proceeding in Louisiana, and there is no error in the allowance of the attorney's fees. The attorney's fees appear to be large considering the function of the attorney's bringing it; but the chancellor had the matter before him with proof, and is in better position to determine the reasonableness of the amount of fee than is this court. There is no substantial merit in the con-

tention of the appellant in the suggestion of error. The last decision, 132 So. 535, does not change the decision in 155 Miss. 31, 119 So. 366, That opinion is referred to in the beginning of the last opinion, and the two are to be taken together. While parties have a constitutional right to make private contracts, and to embody in them such stipulations as they desire, yet the Legislature may provide rights, under law, for materialmen and laborers which private contracts cannot displace; and where the contractor gave the bond contemplated by the contrac' and thus secured the benefit of displacing the liens of the materialmen, he cannot dispense with the requirements of the statute under section 3 that the bond given shall secure the rights of the materialmen and laborers It was, of course, optional to give the bond or leave the statute in force, but, having given the bond, the statutory conditions must remain embraced in the bond, and, as stated before, the statute has the effect of writing the conditions in the bond therein provided. The suggestion of error on behalf of the appellant is overruled.

For the appellee Williamson-Greer Company it is suggested that we erred in holding that this company had waived its right under the bond. The provision of agreement relied upon, made upon the trial of the cause, to sustain this proposition reads as follows:

"That the said Williamson-Greer Company have received as security for their said claim a note of the Natchez Investment Company, Inc., for the amount of the claim, secured by a mortgage on the Eola Hotel and Levy Office Building at Natchez, Mississippi.

"That if it should be finally held in this cause by the court that the bond hereinabove referred to as having been executed by the Hartford Accident & Indemnity Company as surety on the terms and conditions as shown by the pleadings in this cause was and is a bond guar-

anteeing the faithful performance on the part of the said J. V. & R. T. Burkes, contractors, of their contract for the construction of said Eola Hotel Building under said project number 640, as alleged by the' pleadings in this cause *and same is still in force* then that the said Williamson-Greer Company is entitled to a judgment against the Hartford Accident & Indemnity Company for the full amount herein sued for and demanded as hereinabove agreed and as alleged in the cross-bill of complaint filed by Williamson-Greer Company, but the Hartford Accident & Indemnity Company does not agree that they are additionally liable for interest and attorney's fees to said Williamson-Greer Company, but the question of liability for interest and attorney's fees is left to the court as a matter of legal construction under the contract documents and bond; however, it is agreed that said Williamson-Greer Company has been required to come into this proceeding as a creditor for the enforcement and protection of their rights and that it has been necessary for them to employ attorneys, to-wit: Engle & Laub of Natchez, Mississippi, and that they have thereby incurred reasonable attorney's fees for the services required and to be required in the prosecution of their claim to final judgment; and that such proceedings have become necessary by reason of the failure of the contractors, J. V. & R. T. Burkes, to pay the amount of their indebtedness to the said Williamson-Greer Co.''

The counsel for Williamson-Greer Company seem to give small attention to the part of the agreement ''and same is still in force.'' The effect of the decision formerly rendered is that the Williamson-Greer Company waived its right, or was estopped to assert its right, on the bond by reason of having taken the obligations of the Natchez Investment Company secured by lien on the hotel building. A party cannot thus deal with the bond; he could look to the bond and demand payment for the

material furnished under it, but he cannot violate the terms of the bond as to what the contractor was to receive in payment, or the materialmen, for the material furnished. The bond stipulated that the materialmen and contractor should be paid in money. This was an important provision for the protection of the surety on the contractor's bond. There is quite a difference in having money, which is accepted by all persons in satisfaction of all demands, and in taking a mere note and lien; and it is well known that for cash a better bargain can be secured than one on credit secured by note and lien. The Williamson-Greer Company took their security, and whether they intended to waive their right against the bond or not in doing so is not controlling. The question is: Did their conduct in so doing operate as a waiver and estoppel of their right to resort to the bond? The securities taken were not taken by the consent of the surety, and we think the Williamson-Greer Company waived its right to resort to the bond and that it must look to the security which they took apart from the bond.

Suggestion of error overruled.