FRANKLIN SURETY COMPANY *v.* FIDELITY &
DEPOSIT COMPANY.

[No. 13, January Term, 1933.]

*Decided March 20th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles G. Page,* with whom was *Simon E. Sobeloff* on the brief, for the appellant.

*Washington Bowie, Jr.,* with whom was *J. Stuart Gallo-way* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The Fidelity & Deposit Company gave a bond to the board of supervisors of Hinds County, Mississippi, in the penal sum of $75,000, guaranteeing during the period from January 15th, 1930, to January 15th, 1931, repayment of all funds of the board deposited in a named bank; and the Franklin Company reinsured the Fidelity Company against loss on the bond, and costs and expenses, within limits specified. The depository bank, after having been closed since the last banking day on January 17th, 1931, failed to open its doors on January 20th, five days after the date specified as ending the period of deposits covered. There was no evidence of actual default prior to January 20th. The Fidelity Company paid to the county board the amount of deposits not repaid by the bank, and recovered judgment over against the Franklin Company for a proportionate part of the amount paid and expenses of adjustment; and on appeal the Franklin Company contends that the bond was not in force and a source of any liability on the date of the closing of the bank and of the loss, and that, if there was liability on the bond, there was none on the reinsurance contract, and consequently the Franklin Company cannot, under that con-

tract, be held for any part of the amount which the Fidelity Company paid. Construction of the bond and of the contract of reinsurance, and investigation of the question of liability under each for what was in fact paid out, constitute the problem in the case.

The bond was given to comply with requirements of the statutes of Mississippi, which, as reproduced in a stipulation and in briefs of the parties, contained the following among other provisions: Liability on a bond exacted by law and given to secure performance of a public contract shall be that prescribed by law for the bond to be given. A bank qualifying as a depository for county funds is required to pay interest on the average daily balance at a rate to be agreed upon, not less than two per cent.; and when more than one bank in a county qualifies as depository, the board of supervisors shall have the right to designate how much of any one fund shall be kept on deposit in any one depository, and adopt rules for their receiving deposits (Code Miss. 1930, sec. 4340). The board is, under section 4341 (Code Miss. 1930), to receive bids or proposals from the banks, and the bids or proposals shall designate the kind of security as authorized by law which the banks propose to give, and the funds shall "be deposited in the bank or banks proposing the best terms having in view the safety of such funds and the terms made with each depository shall remain in force for the current year and until new arrangements shall be made according to this chapter." Qualification of a bank as depository includes the furnishing of security either in bonds of public corporations or in surety bonds of any surety company authorized to do business in Mississippi, in an amount ten per cent. greater than the maximum sum to be placed on deposit (Code Miss. 1930, sec. 4346).

The depository in this instance was designated on January 9th, 1929, to serve for the ensuing year as depository of a maximum of $150,000. The Fidelity Company furnished two bonds in the penal sums of $75,000 and $90,000, respectively; and at the opening of the year 1930 these bonds were extended to secure continued deposits in the bank dur-

ing that year to a like maximum, of $150,000. The total of the two bonds, $165,000, equaled the maximum deposit with the added ten per cent. margin. The bond for $90,000, differing from the other, was dated to expire on January 30th. It was the undertaking on the bond for $75,000, so extended to January, 1931, and dated to expire on January 15th, that the Franklin Company reinsured, and which is the basis of the claim now made.

The condition of the bond, with the original dates, was: "That if the principal shall during the period from the 15th of January, 1929, to the 15th day of January, 1930, well and faithfully perform the trust reposed in it by such designation (as depository), and shall promptly pay all funds and monies so deposited with it on the warrant of the lawful parties, and shall well and truly indemnify the said obligee from any and all loss which it may suffer or sustain during the period aforesaid by reason of that designation of the said principal as such depository aforesaid, then this obligation shall be void," etc. The extension was, according to its term, "for the further period beginning on the 15th day of January, 1930, at noon standard time, and ending on the 15th day of January, 1931, at noon standard time." The reinsurance contract contained the following stipulations, among others: The undertaking, generally, was that the Franklin Company reinsured the Fidelity Company "under the bond numbered above * * * against loss thereunder and against costs and expenses as hereinafter defined." "The Reinsured shall take charge of all matters arising under the bond. It shall decide whether or not it is liable thereunder, and shall determine the amount of its liability in case it decides it is liable. * * * Any such decision * * * or other action of the Reinsured in connection with any claim matter arising under the bond shall be final and conclusive and unconditionally binding upon the Reinsurer. * * * The liability hereunder of the Reinsurer begins 1—15—30 to 1—15—31 and ends with the termination of the liability of the Reinsured." A blank evidently left for a date of beginning only was filled with the dates 1—15—30 to 1—15—31. "If

the liability of the Reinsured, by the terms of the bond, be continued by the issuance of a continuation certificate, and the liability be so continued, and if the Reinsurer shall not thirty days previously have notified the Reinsured, in writing at the latter's home office, of its desire not to continue the reinsurance, this agreement shall apply to such continuation of liability for one year."

The Franklin Company in due time notified the Fidelity Company that it elected not to continue the reinsurance on the bond beyond the period ending January 15th, 1931, and requested that the reinsurance be replaced as of the anniversary date of the bond, January 15th. County funds to the amount of $35,987.57 were on deposit on January 5th, 1931, and there had been no substantial deposits or withdrawals from the account during some time prior to that date; but $1,328.76 had been withdrawn later, and $34,841.11 left to the credit of the county. Payments made by the Fidelity Company were distributed on the books of the bank between the two bonds. No designation of a depository for the ensuing year had as yet been made.

In the suit, there was no dispute of facts; and the court announced the guiding principles of law in ruling on prayers submitted by the respective parties. This court, after review of the conclusions, concurs in those announced, and finds the judgment must be affirmed.

The question resolves itself for the most part into a weighing of the precise dating of the obligation under the bond, and under the reinsurance contract, against the statutes and decisions of the courts of Mississippi, made part of the record by agreement, and urged as having inescapably formed part of the contract and imposed the more extended liability. As stated, the statutes provided that liability on a bond required by law to secure performance of any contract is that prescribed by the law; and this is declared, too, in decisions of the courts. "The obligor and the obligee, as well as the sureties on the bond, are presumed to have known what the statute required when the bond was executed. The bond having been executed, and having accomplished its purpose,

the law will write into the bond what it requires should be written into it." *Commercial Bank v. Evans,* 145 Miss. 643, 112 So. 482, 483; *Hartford Co. v. Natchez Co.,* 161 Miss. 198, 132 So. 535, 135 So. 497. The undertaking of the bond in this case, however limited in terms otherwise, was under the law of Mississippi co-extensive with the obligation of the bank to be secured under the designation as depository. And, proceeding to construe the obligation upon this principle, the appellee contends, and the trial court has agreed, that the extension of the obligation on the bond in controversy to cover the loss on January 20th, 1931, results from the provision of the law that "the terms made with each depository shall remain in force for the current year and until new arrangements shall be made according to this chapter." Section 4341 (Code Miss. 1930). Against this, it is contended by the appellant that, in its use of the word "terms," this provision for extension refers, not to the time of service and obligation as depository, but to the details of the contract with a designated depository within the time designated, details which are expected to vary with the bargains possible with one depository and another; and that therefore the provision cannot be construed to extend the time of serving. Earlier provisions of the statutes here described specify some of the details of contracts, such as the shares of deposits to be held and interest rates; and immediately preceding the very clause now quoted in argument the word "terms" is used in this sense of details of contract or bargain—"to be deposited in the bank or banks proposing the best terms having in wiew the safety of such funds." But the decisions in Mississippi appear to have settled the meaning as the appellee argues, that is, that the obligation secured was extended until the time of substitution of a new depository, or a new selection of the same depository. In the case of *Sunflower County v. Bank of Drew,* 136 Miss. 191, 101 So. 192, 193, the court held that a treasurer's treatment of a bank as a depository for a new year, without formal designation, amounted to a new arrangement as contemplated in the statute, and determined the period of liability of a previous surety. "The assumption

of custody of the funds in the bank by the treasurer, and the payment of warrants drawn thereon in the regular conduct of the business of the county for the year following the expiration of the bond, constituted a new arrangement and released the guaranty company from liability after the $13,639.22 (on deposit at the end of the year specified in the bond) had been paid to the county." And see *Fidelity & Deposit Co. v. Wilkinson County,* 109 Miss. 879, 69 So. 865.

The appellant argues that a limit by such a new arrangement would have no place in this case because the county board had made a special arrangement for security beyond January 15th, and beyond the time of default, by dating the other bond, for $90,000, to expire on January 30th. The penalty in that second bond was more than sufficient for the amount actually on deposit in the bank at the time, and there was no immediate need for newly arranging a depository for the ensuing year; and in the view of the appellant there is to be seen in that situation a satisfactory, sufficient arrangement intended by the board to serve as the entire arrangement for the fifteen days after that specified for expiration of the reinsured bond. But that was not the original arrangement, at the beginning of the year 1930; and the court sees no sufficient ground for inferring that special intention to have existed later. It appears that the two bonds were given to secure together deposits to a maximum of $150,000, and occurrence of the default at the end of the year between the termination dates specified in the two bonds was an accidental circumstance which could hardly be said to reflect upon the intention at the time of execution or extension. To repeat, the statute, as authoritatively construed, provided that the obligation of the depository should continue until arrangement for a depository for the ensuing year was made, and that a bond given under the statutes has written into it an undertaking to secure the deposit until the making of the new arrangement. Thus the obligation of the surety on the bond given under the statutes was at the beginning of the year of deposit extended to the time of substitution of the new arrangement. There was nothing

at the end of the year in this case which would serve to curtail the period of liability so extended.

The remaining question, whether, given the existence of liability on the bond, the reinsurance contract, not controlled by the statutes, but only by its own terms, was likewise extended to cover a loss after January 15th, 1931, seems clearly settled by those terms. The object of the reinsurance was plainly to take over part of the obligation of the bond, whatever it might be; and consistently, the general statement of the undertaking was that the Franklin Company reinsured the Fidelity Company "under bond numbered above * * * against loss thereunder and against costs and expenses as hereinafter defined." The decision of all questions of liability is intrusted to the Fidelity Company, and those decisions are expressly made "final and conclusive and unconditionally binding upon the re-insurer," except that it may show that liability on the Fidelity Company existed under other bonds. In the opinion of the court the filling in of the blank for the beginning date with dates of both beginning and ending, before the words, "and ends with the termination of the liability of the Reinsured," would not be sufficient to establish an agreement to give the two instruments different dates of termination, in the face of the evident purpose that the liability, whatever it is, should be reinsured.

The two bonds given by the Fidelity Company seem to this court to have been concurrent undertakings for parts of the total liabiltiy of the depository, and, that being true, there was concurrent liability on the two for loss proportioned to the respective penal sums. This was the ruling of the trial court, on which it founded its verdict and judgment, and finding the rulings correct, we must affirm the judgment.

*Judgment affirmed, with costs.*