GLOVER ET AL. V. FALLS.

[82 South. 4, Division B. No. 20767.]

1. APPEAL AND ERROR. *Decree of chancellor.*
   Where in an injunction suit to restrain defendant from opening new roads or crossing plaintiff's lands, a decree was rendered by the chancellor based on conflicting evidence and a personal inspection of the premises by the chancellor, his decree will not be disturbed by the supreme court on appeal.

2. EASEMENTS. *Grant in general terms.*
   If an easement in land is granted in general terms without giving definite location and description to it, the grantee does not thereby acquire a right to use the servient estate without limitation as to place or mode in which the easement is to be enjoyed. The right to locate belongs to the owner of the servient tenement, but he must exercise it in a reasonable

manner, having due regard to the rights and interest of the owner of the dominant estate. If, however, he fails to designate the easement when requested, as for example the course of a right of way, the party who has the right thereto may select a suitable route for such way, taking into consideration the interest and convenience of the owner of the land over which it passes. In such case the route is determined, not by the sole interest of either of the parties, but by the reasonable convenience of both.

3. LOGS AND LOGGING. *License. Construction.*

The fact that roads were laid out and in use on the grantor's plantation, when he granted to the purchaser of timber, the privilege of ingress and egress to said timber, carries the presumption that the grantee was expected to use the ways already laid out, maintained and in use.

4. EASEMENT. *Grant in general terms. Change of location.*

The general rule is that if an easement granted in general terms has been located, it cannot be changed without the consent of the other party, and cannot be treated as a "shifting" one.

5. EVIDENCE. *Parol evidence. Location of easement granted in general terms.*

Where the owner of a plantation had granted to a purchaser of timber the "right of ingress and egress to said tract of timber," it was not error to admit oral testimony to show the system of roadways and to locate, describe and define the ways which might be used and those which the defendant are restrained from using.

6. INJUNCTION. *Ex parte application.*

An injunction should not be granted upon an *ex parte* application and without notice, except in cases of greatest emergency and to prevent irreparable injury.

APPEAL from the chancery court of Tallahatchie county.

HON. JOE MAY, Chancellor.

Suit by A. Falls against N. M. Glover and others. From a decree for complainant, respondent appeals. The facts are fully stated in the opinion of the court.

*Ward & Ward* and *Monroe McClurg,* for appellant.

*Hays, Stingily & Whitten,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellee, as complainant, prayed for and obtained a temporary injunction against N. M. Glover, appellant, and certain other defendants restraining them from opening or making use of new roads or from going across the growing crops of cotton and corn on the lands of the complainant with their teams, wagons, log skidders, and laborers, and from interfering with the due cultivation of appellee's growing crops. The temporary injunction upon final hearing was made perpetual, and from this decree N. M. Glover, the principal party interested, prosecutes this appeal. The bill of complaint charges, and the testimony shows, that the complainant sold to Mr. Glover all of the merchantable "tupelo gum" timber from ten inches and up on what is commonly known as "Snowbrake," situated on lands of the complainant a short distance west of the station of Albin, in Tallahatchie county, and more definitely described in the written conveyance of this timber. Glover, the party of the second part, was to have two years in which to remove the timber, and, for the purpose of removing the logs and also for the purpose of hauling any lumber manufactured from the logs to the railroad, the complainant granted unto the party of the second part "the privilege of ingress and egress to said tract of timber." It is further alleged in the bill that the said brake at high-water times, or during the periodical rises of the water in the brake, carried sufficient water to float timber from the said brake to the defendant's sawmill; and between the said brake and the railway station and between plantation roads already laid out and in use at the time said contract was executed the complinant owned several hundred acres of farm lands in a high state of cultivation, and that when this suit was instituted he had crops of growing corn and cotton thereon, and that irreparable injury to these

growing crops would be done if the defendants hauled logs across the plantation as they contemplated and threatened to do. It is further alleged that when the water was not up in the brake there was a practical roadway around the rim of the brake and between the brake and the complainant's growing crops, which was a practical and convenient way by which timber might be hauled, and that during high water logs could be floated down the brake; that when the contract was entered into both parties thereto contemplated that the logs would in fact be floated out of the brake, but that when the water was not up the defendants were offered the use of the said road around the rim of the brake and a system of plantation roads that was sufficient and reasonable for the removal of the timber.

The cause was set down for hearing on bill, answer, motion to dissolve, and proof. On the trial of the case the chancellor, by agreement of the parties, went to the brake and personally viewed the plantation, the road around the rim of the brake and the system of plantation roadways in use at the time the contract was entered into, the ways offered to the defendant by the complainant, and also inspected the ways which the defendant threatened to use, and after this inspection and after hearing the testimony in the case entered a decree overruling the motion to dissolve the injunction and entered at length a final decree setting forth his findings of facts and perpetuating the injunction with slight modifications. It appears that a civil engineer made and filed as exhibit to his testimony a certain map showing the roads, and the chancellor by decree designated the ways which defendants might use and those which they were enjoined from using. The decree, among other things, recites that—

The chancellor "is satisfied that the complainant has offered the defendants ways which are entirely sufficient and reasonable for the removal of the timber

on Snowbrake, to wit, the road between the timber line on said brake and the crops which are grown on said land and the system of plantation roads, together with reasonable right of way into said first-named way, and skidding stations at reasonable intervals and places; and the court being further satisfied that the ways proposed by the defendants, and by them threatened to be used, were unreasonable," etc.

The chancellor declined to award any damages by reason of the suing out of the preliminary injunction and taxed the defendant with the costs.

It appears that the preliminary injunction was granted on the *ex parte* application of the complainant. Snowbrake is in a crescent, and the average timber in the brake is approximately one-eighth of a mile wide.

There is evidence tending to show that Mr. Glover, in 1917, cut away "the brush, bushes and obstruction" to the width of twenty or twenty-five feet, so that logs could be floated to the mill, and did in fact float some timber prior to July, 1917, when there was an enforced shut down by the alleged illness of Glover and certain litigation which Glover had with the Bayou Lumber Company. In 1918 there was no high water and Glover was forced to make arrangements to haul the balance of the logs, and for this purpose it was necessary to use log skidders at frequent intervals or spaces, and by means of cables reach out into the brake and pull the logs out to firm ground on the edge of the appellee's plantation.

There are various assignments of error, but those which are seriously argued may be stated as follows: First, that the written injunction was fraudulently and unlawfully sued out and that without notice to defendant; secondly, that the court erred in permitting oral testimony that the parties contemplated the logs would be floated down the brake; thirdly, during he pro-

gress of the trial the court declined to hear evidence of defendant's alleged damages; fourthly, that in the absence of high water Glover was justified in getting his logs hauled, even though the plantation would be crossed.

An examination of the record convinces us that all the issues presented by the various assignments and pressed in argument are principally issues of fact. There is conflicting testimony, and the decree of the chancellor is not only based upon the testimony but upon his personal inspection of the brake and the system of ways in dispute. In this attitude of the record we are not justified in reversing the chancellor on the facts.

In conveying the timber rights, appellee in general terms granted an easement for the removal of the timber. No particularly way or ways are defined by the contract. The only legal question then which is worth while to discuss is the question as to which party to the contract had the first or primary right to locate the road way or ways to be used in the removal of the timber, and, secondly, if the owner of the land had had the right to designate the way, did the complainant in this case designate and tender ways that were reasonably sufficient? Counsel refer us to certain authorities dealing with a way of necessity and the right of the owner to fix the line of the way of necessity over his land, among other cases being that of *Lamar County* v. *Elliott,* 107 Miss. 841, 66 So. 203. Cases dealing with a way of necessity are not altogether pertinent to the present inquiry. The case at bar is one where an easement has been expressly granted by contract, for a purpose well defined in and by the contract; but the easement is granted in general terms, and the line of way or ways is not designated. The general rule of law in such case is well stated in 9 R. C. L., par. 48, as follows:

"If an easement in land is granted in general terms, without giving definite location and description to it, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. The right to locate belongs to the owner of the servient tenement, but he must exercise it in a reasonable manner, having due regard to the rights and interests of the owner of the dominant estate. If, however, he fails to designate the easement when requested, as for example, the course of a right of way, the party who has the right thereto may select a suitable route for such way, taking into consideration the interest and convenience of the owner of the land over which it passes. In such case the route is determined, not by the sole interest of either of the parties, but by the reasonable convenience of both."

If there is any question in this case as to what constituted a reasonable use of the easement this question was one of fact and has been settled by the chancellor. *Chapman* v. *Newmarket Mfg. Co.*, 74 N. H. 424, 68 Atl. 868, 15 L. R. A. (N. S.) 292; *Rowell* v. *Doggett*, 143 Mass. 483, 10 N. E. 182. There was some testimony on the part of the complainant tending to prove that the parties contemplated a "floating proposition" alone, and not the hauling of logs over the complainant's roadways. It is unnecessary for us to notice or comment on this phase of the case, because the chancellor did not limit the grantee to a floating proposition," but in the final decree definitely and elaborately described the system of roads which the defendant and his servants might use. The decree found that these roads are sufficiently convenient and reasonable. The fact that these roads were laid out and in use at the time of the contract was made carries the presumption that the grantee was expected to use the ways already laid out, maintained, and in

use. It is unnecessary for us to decide whether the grantee would be confined to the roads already laid out, especially if an emergency should arise that would render additional ways absolutely necessary in cutting and removing the logs in accordance with the contract. The general rule seems to be that if an easement granted in general terms has been located, it cannot be changed without the consent of the other party, and cannot be treated as a "shifting one." 9 R. C. L. par. 49, and cases cited in the footnotes; *Winslow* v. *Vallejo,* 148 Cal. 723, 84 Pac. 191, 5 L. R. A. (N. S.) 851, 113 Am. St. Rep. 349, 7 Ann. Cas. 851, and case note. The chancellor we think, correctly applied the law in the present case.

Inasmuch as the defendant, under the findings of the chancellor, was entitled to no damages whatever, there is no reversible error in the refusal of the chancellor to allow the defendant during the progress of the trial to prove alleged elements of damage. We see no error in admitting oral testimony to show the system of roadways and to locate, describe, and define the ways which might be used and those which the defendants are restrained from using.

It is true that under well-known decisions of our court an injunction should not be granted upon an *ex parte* application and without notice, except in cases of greatest emergency and to prevent irreparable injury. Under the showing finally made, we are not justified in holding that the injunction in this case was unlawfully or fraudulently sued out, and any discussion of this point on the present appeal is disposed of by a consideration of the merits and equity of the whole case. Surely there was some limitation upon the right of Mr. Glover and his servants in the exercise of the easement granted. The timber line was a crescent completely surrounding complainant's plantation. If the defendant could cut across the

cultivated lands of the complainant at one point he might do so at many points, and such right, if established, might authorize the destruction of complainant's growing crops.

*Affirmed.*