### ALLEN v. BOYKIN.

(In Banc. Feb. 11, 1946.)

[24 So. (2d) 748. No. 36038.]

418

Elbert Johnson, of Indianola, **Ernest Kellner**, of Greenville, and **Jones & Ray**, of Jackson, for appellant.

Clements & Clements, of Rolling Fork, for appellee.

422

**Roberds, J.,** delivered the opinion of the court.

July 23, 1940, appellee Boykin conveyed to appellant Allen and another a one-fourth undivided interest in the oil, gas and minerals in 4935 acres of land in Issaquena County, Mississippi.

December 4, 1941, Allen signed and delivered to Boykin the following written instrument:

"I, the undersigned, B. B. Allen, hereby acquit back to W. R. Boykin my undivided one-half interest in that certain Royalty deed executed by W. R. Boykin to myself and W. Calvin Wells, III, dated July 23, 1940, and of record in Book QQ at page 317, on file in the office of the Chancery Clerk of Issaquena County, Mississippi, covering the royalty in certain lands located in Issaquena

County, Mississippi, the same to become effective only after the said W. R. Boykin, has executed the oil and gas lease to one Fillingame on said lands together with the drilling contract, and all other papers now prepared and being signed up to start drilling operations in a block of land, of which this is a part.

"Witness my signature, this the 4th day of December, 1941.

"B. B. Allen."

December 1, 1943, Boykin executed to the California Company a mineral lease on 1368 acres of said land.

May 29, 1944, Allen filed his bill in this cause seeking to set aside the instrument he executed to Boykin, copied above, and to recover from Boykin one-eighth of the money Boykin had received under the California lease, alleging, as grounds for relief, (1) that there was no consideration for the execution of said document, (2) that it contained no operative words of conveyance, and (3) that the condition on which it was to become effective, as specified therein, was never complied with by Boykin.

The Chancellor dismissed the bill and Allen appeals.

On the question of consideration, the testimony of Allen himself is that he, as an attorney, had a client on whose lands Boykin held a second trust deed to secure an indebtedness then past due, and in which lands Allen owned certain mineral rights, and that Boykin had refused to renew the trust deed and was about to foreclose it; that, in addition, appellant and his client and others were anxious to form a pool of their lands and enter ito a certain drilling contract then under consideration, and, in the words of Allen, "We tried to get Boykin to renew that trust deed, and to execute the drilling contract so we could get something started, and he declined to carry on with us until he got an an 'acquittance' as he expressed it from me." Under these circumstances Allen executed to Boykin the instrument in question and Boykin refrained from foreclosing his trust deed and placed the 4935 acres of land in the pool and joined in the drill-

ing contract, as will be shown more in detail hereinafter. This constituted sufficient consideration for the execution of this instrument by Allen. Indeed, forbearance to foreclose the trust deed was itself sufficient. Barnes v. Moody, 5 How. 636, 37 Am. Dec. 172.

The words of conveyance are "I, the undersigned, B. B. Allen, hereby acquit back . . . ." The meaning of the words must be determined in the light of the circumstances under which they were used. It is clear that both parties thought Allen was re-conveying to Boykin just what Boykin had formerly conveyed to Allen. The instrument referred to the Boykin conveyance for the purpose of determining both the extent and source of Allen's interest and the description of the land to which such interest applied. Allen had gotten his title from Boykin; therefore, he used the expression "acquit back," intending thereby to reconvey to Boykin what Boykin had conveyed to him. It will be noted, too, from the quoted testimony of Mr. Allen set out above, that in the negotiations for this re-conveyance the instrument had been designated an "acquittace." It is the duty of the court to give effect to the intent of the parties if it can be done under recognized rules of construction. In such a case a deed will be construed to effectuate the manifest intention and purpose of the parties although it is inartifically and untechnically drawn. Yazoo & M. V. R. Co. v. Lakeview Traction Co., 100 Miss. 281, 56 So. 393; Dunn v. Stratton, 160 Miss. 1, 133 So. 140; Sumter Lbr. Co. v. Skipper, 183 Miss. 595, 184 So. 296, suggestion of error overruled 183 Miss. 595, 184 So. 835.

"Technical terms, however, need not be used; and if an intention to pass a title is disclosed, the court will give effect to such intention notwithstanding inaccuracy of expression, or inaptness of the words used." 16 Am. Jur., p. 469, Sec. 49.

Webster's New International Dictionary gives as one definition of "acquit": "To discharge, as a claim or debt; to clear off; to pay off; also, Archaic, to pay or render back; . . . ."

In Gordon v. Haywood, 2 N. H. 402, the phrase "quit . . . all my right and title" in a deed was construed as the equivalent of "sell" or "release" and to be sufficient to pass title to the land in question.

The word "acquit" means to release or discharge from an obligation. Commonwealth v. Benson, 94 Pa. Super. 10.

In Smith v. Winston, 2 How. 601, Chief Justice Sharkey used this expression, "In a quit claim deed, the party does nothing more than to acquit the grantee from any title or right of action which [he] may have . . ." We, therefore, conclude that the words "acquit back", used under the circumstances here shown, vested in Boykin title to such mineral rights as Allen had when he executed the conveyance.

As to the third question, the instrument stipulates it is to become effective only after Boykin had "executed" the documents therein specfied. It is argued that this required Boykin to actually deliver the papers and lose all control thereover and that signing and acknowledging the papers and their delivery in escrow did not comply with that requirement. Here are the circumstances confronting the parties at the time: A drilling contract and an escrow agreement had been prepared and had either been, or was in the course of being, signed and acknowledged by the parties, and as a part of which the landowners were to all execute leases to the driller. This included some nine persons owning about eleven thousand acres of land. All of these parties, including Boykin, signed and acknowledged the drilling contract and the escrow agreement, together with separate leases on their respective lands, including one by Boykin on the 4935 acres, and one by Allen on other lands in which he had an interest. Under that contract the driller agreed to begin operations somewhere on the block of lands by March 1, 1942, but if he should fail to do that "this contract shall terminate as to all parties hereto and relieve all parties from any liability thereunder," and the oil

and gas leases executed simultaneously with the execution of the drilling contract and the escrow agreement should be returned by the escrow agent to those executing them. So that while the driller agreed to begin drilling by a specified date, he was relieved of liability in case he did not do so and the result would be a return of the papers by the escrow agent. As stated, appellant Allen joined in that drilling contract and escrow agreement. It was in the light of these purposes and circumstances the instrument from Allen to Boykin provided that it would become effective only when Boykin had "executed" the specified documents. The drilling contractor defaulted and all papers were duly returned by the escrow agent. The papers signed and acknowledged by Boykin were, therefore, never actually delivered to the contractor. Did the word "executed," used under these circumstances, require the documents to be actually delivered so that Boykin should lose all right to and control over them? We do not think so. Both parties were familiar with the provisions of the drilling contract and the escrow agreement. They knew the papers might or might not be actually delivered the driller, depending on whether he performed the contract. The word "executed" meant only that Boykin should sign the drilling contract and the escrow agreement and his separate lease, and join in the deposit of these documents with the escrow agent under the escrow agreement. Boykin did that. That was all it was contemplated he should do. Under the circumstances he could not actually deliver his papers to the driller. Other parties had the same rights he had under the escrow agreement. However, while Boykin, because of the default of the driller, never lost all right to his papers, he would have done so had the driller complied with the contract. The actual delivery after deposit in escrow depended not on the act or wish of Boykin but on the act of the driller. Boykin had lost all control over and all right to them had the driller complied with his contract. Therefore, Boykin complied

with the condition on which the reconveyance to him by Allen was to become effective.

If it be said that the real agreement was that the instrument would be null and void and be by Boykin returned to Allen if the driller did not comply with his contract, the answer is that it is not claimed that such was the understanding, nor is there any proof whatever of it, and a further answer is that the writing could easily have contained that agreement, and should have done so, if it in fact was made. It is not suggested that Boykin was guaranteeing that the driller would carry out the contract. Appellant was not only the grantor in this instrument but he also prepared it, and in such cases, under familiar rules of construction, doubtful questions should be construed favorably to the grantee.

Affirmed.