**CHEVRON OIL COMPANY, Plaintiff,**

**v.**

**Noel D. CLARK et al., Defendants.**

**Civ. A. No. 4166.**

United States District Court
S. D. Mississippi,
Jackson Division.

Oct. 3, 1968.

18. H.R.Rep. No. 1076, 90th Cong., 2d Sess. 2 (1968), U.S.Code Cong. & Ad.News (90th Cong., p. 748).

Martha W. Gerald, Wells, Thomas & Wells, Jackson, Miss., for plaintiff.

L. O. Smith, Jr., Bacon & Smith, Jackson, Miss., and B. O. Mounger, Sr., Mounger & Mounger, Tylertown, Miss., for defendants, Noel D. Clark, W. D. Mounger and Deposit Guaranty Nat. Bank.

George P. Hewes, III, and W. T. Jones, Brunini, Everett, Grantham & Quin, Jackson, Miss., for defendants, W. C. Richardson, P. J. Gay and D. E. Vasser.

## OPINION OF THE COURT

NIXON, District Judge.

Chevron Oil Company filed a bill of interpleader in the United States District Court for the Southern District of Mississippi to determine the interests of various parties in the operating rights under an oil and gas lease assigned by Chevron. The lease covers certain lands in Sections 31 and 36 of Township 5 North, Range 1 East, Franklin County, Mississippi, and was originally acquired by Chevron from the United States via a non-competitive, acquired-lands oil and gas lease. The primary term of the lease has expired, but the lease has been maintained since May 31, 1965, by production and remains in full force and effect.

Chevron assigned its interest in the operating rights in this lease to Clinton G. (Gay) Herring, down to the base of the Wilcox Formation, and the conflicting claims of the litigants in this interpleader stem from assignments by Mr. Herring. These claims center around the ownership of 42% of the operating rights in the Southeast Quarter of the Southeast Quarter of Section 36.

There is no dispute as to the remaining 58% of the operating rights in the Southeast Quarter of the Southeast Quarter of Section 36. Nor is there any controversy regarding the ownership of operating rights as to lands included within Section 31. Furthermore, there is no dispute as to the royalty and overriding royalty interests of the United States, Chevron, and Herring, and these interests are of record. It is undisputed that the

Deposit Guaranty Bank in Jackson, Mississippi holds a deed of trust or mortgage executed by Noel D. Clark covering his interest in the Southeast Quarter of the Southeast Quarter of Section 36.

A prior controversy as to rights in the operating interests in both Sections 31 and 36 resulted in a compromise "Contract of Agreement" on February 26, 1960 (hereinafter referred to as the "1960 Agreement"). All the parties in litigation in this cause either entered into the 1960 Agreement or claim through parties to that agreement; the various assignments of the Herring interest up to this agreement are therefore irrelevant to a resolution of the controversy now before the Court.

The 1960 Agreement stipulated that 29.5% of the operating rights in the Southeast Quarter of the Southeast Quarter of Section 36 were owned by Miss-La-Tex Oil and Gas Corporation and T. F. Vanderlaan; that a 6.25% interest was owned by Connie M. Burleson, Jr.; and that a 6.25% interest was owned by Pat M. Fenton. These interests comprise the 42% interest in controversy.

The competing claimants to the 42% interest are Noel D. Clark, W. C. Richardson, D. E. Vasser, and P. J. Gay. Vasser and Gay, however, claim by virtue of assignments from Richardson, who acted on their behalf as well as his own in the transactions relevant to this cause. Since their interests are identical with that of Richardson, except where necessary, they will not be mentioned further in this opinion.

Richardson's claim to the 42% interest is founded on conveyances from Miss-La-Tex, Fenton and Burleson of their interests in the Southeast Quarter of the Southeast Quarter of Section 36 under the 1960 Agreement. Clark, who was a party to the 1960 Agreement, relies on a conveyance from Vanderlaan individually of his interest in the lands in question, and on alleged forfeiture of well participation privileges by other parties to the 1960 Agreement under the provisions of that Agreement. The Agreement provided that any of the parties to that instrument who desired to drill a well should proceed by giving notice of the intent to drill to all having an interest in the lands covered by the agreement. The parties notified were given 15 days from receipt of notification to "advance to the Operator, its or their share of the estimated cost of such drilling operations, or secure Operator in a manner satisfactory to Operator." Under the terms of the agreement a failure to comply with the requisites for participation required a nonparticipating party to assign his interest in the area of the proposed drilling site to the drilling party.

On October 28, 1965, pursuant to the 1960 Agreement, Clark gave notice of his intent to drill a Wilcox well in the Southeast Quarter of the Southeast Quarter of Section 36. Enclosed in this notice of intent to drill, referred to as an AFE letter, was a statement of the estimated costs of drilling and completing the well and the amounts due from the respective parties for their share of such costs. The letter specified that election to participate should be accompanied by a certified or cashier's check, or bank money order, payable to "Noel D. Clark— Special Oil Account", as advance of costs under the terms of the 1960 Agreement.

The AFE letter was received by T. F. Vanderlaan on November 1, 1965, in his hometown, Corsicana, Texas. Copies of the letter were also sent to Kelsey McKay, Secretary of Miss-La-Tex, at McComb, Mississippi, and to various directors of Miss-La-Tex, and receipt of the letters by them is evidenced by registered return receipts. No response to these AFE letters was made by any party other than Vanderlaan. Vanderlaan's response was in the form of documents disavowing any intent to participate in the well executed on behalf of himself individually and on behalf of Miss-La-Tex, as its president. These documents were obtained by Clark on November 1, 1965, when he visited Vanderlaan in Corsicana. On this occasion Clark also secured from Vanderlaan a letter addressed to Chevron which authorized that company to assign any interest Vanderlaan had in the

Southeast Quarter of the Southeast Quarter. of Section 36 to Clark, for which Clark paid Vanderlaan $2000. The letter said that "This writer does acknowledge receipt of valuable consideration for this conveyance directed hereby and does hereby convey, set over and disclaim the said interest to Mr. Clark by virtue of this letter."

It should be noted that at the time of Vanderlaan's disavowal of intent to participate on behalf of Miss-La-Tex, the corporation was in a state of "nonexistence" for failure to pay the Mississippi franchise tax. A suspension of the corporation was effected by the Mississippi State Tax Commission on March 5, 1963, under authority of Sec. 9327, Miss.Code of 1942, Rec., and the corporation became "nonexistent" under that Code section as of March 5, 1964.

Clark relies on the above described documents from Vanderlaan in claiming the 29.5% interest owned by Vanderlaan and Miss-La-Tex under the 1960 Agreement. These documents were not recorded in Franklin County, Mississippi, nor was there any resolution of the Board of Directors of Miss-La-Tex authorizing Vanderlaan to execute such documents on behalf of the corporation, or ratifying Vanderlaan's acts in so doing. On November 1, 1965, however, Vanderlaan owned 229,980 shares of the capital stock of Miss-La-Tex out of the 343,733 authorized and issued shares of the corporation.

After securing the above documents and prior to November 4, 1965, Clark gave notice to Richardson and his attorneys of his acquisition. On November 4, 1965, Richardson, Kelsey McKay, and Richardson's attorney flew to Corsicana and secured from Vanderlaan an assignment to McKay of Vanderlaan's stock in Miss-La-Tex for a consideration of one dollar, and also secured a quitclaim from Vanderlaan to Miss-La-Tex of any interest he might have as an individual in the lands covered by the 1960 Agreement. Vanderlaan insisted, however, on inclusion by interlineation in this latter instrument of a statement to the effect

that he, as an individual, claimed no interest in these lands. The quitclaim was notarized and subsequently filed for record in Franklin County on November 18, 1965.

On November 5, 1965, McKay paid the delinquent franchise taxes due from Miss-La-Tex to the State of Mississippi. On November 9, 1965, the corporation's board of directors met, elected McKay president, and authorized him to sell the corporation's interest in the Southeast Quarter of the Southeast Quarter of Section 36 "to such persons and upon such terms and considerations as he, in his sole discretion, deems to be in the best interest of this Corporation." Pursuant to this authority, McKay conveyed any interest of Miss-La-Tex in the Southeast Quarter of the Southeast Quarter of Section 36 under the 1960 Agreement to W. C. Richardson. This conveyance was executed on November 9, 1965, and the instrument of conveyance was filed for record in Franklin County on November 18, 1965. The consideration for this conveyance was $10,000, to be paid by Richardson upon satisfaction of two conditions: obtaining the consent of Chevron to the conveyance, and recognition by Clark of Richardson's interest under the conveyance, or the working out of a drilling agreement with Clark. It is on this conveyance from Miss-La-Tex that Richardson bases his claim to 29.5% interest in the Southeast Quarter of the Southeast Quarter of Section 36 owned by Miss-La-Tex and Vanderlaan under the 1960 Agreement.

The other interests controverted in this action are the 6.25% interest owned by Fenton and the 6.25% interest owned by Burleson under the 1960 Agreement. Richardson acquired these interests from the above named individuals on October 19, 1965, and recorded the instruments conveying these interests in Franklin County on November 18, 1965.

On November 10, 1965, Richardson and his attorney met with Clark at Clark's office in Memphis, Tennessee and advised Clark of Richardson's election to participate in Clark's proposed well in the

Southeast Quarter of the Southeast Quarter of Section 36. Richardson alleged he succeeded to the participation rights of Miss-La-Tex, Fenton and Burleson under the 1960 Agreement by virtue of conveyances to him from these three parties. Clark denied the existence of any rights in Richardson to participate in his proposed well. On November 11, 1965, Richardson assigned to each D. E. Vasser and P. J. Gay an undivided one-third interest in and to any interest acquired by Richardson in the lands in question by virtue of the assignments from Fenton, Burleson and Miss-La-Tex. On November 12, 1965, Richardson, acting pursuant to the 1960 Agreement, forwarded to Clark a letter of credit drawn on the First National Bank of Jackson, Mississippi in the amount of $25,000, which was to secure Clark for his share of the expenses (and those of Vasser and Gay) incurred in the drilling and completion of the proposed well. This sum was more than the estimated costs attributable to the interests claimed by Richardson, Vasser and Gay, but the letter of credit was conditioned on Richardson's approval of invoices for drilling and completion costs of the well.

Clark did not draw on this letter of credit, nor did he return it to Richardson until the letter was produced on request of Richardson at this trial. On November 24, 1965, Clark wrote and wired Richardson that the interests claimed by him had been forfeited for failure "to advance to the operator your share of the estimated costs of contemplated drilling operation or to secure operator in a manner satisfactory to operator for said costs." Clark reiterated his denial of any interest in Richardson and concluded that "nothing herein contained is intended to recognize any interest ever being owned by you in the first instance or a ratification."

On November 17, 1965, the Mississippi Oil and Gas Board issued a permit to Noel D. Clark for the drilling of a well in the Southeast Quarter of the Southeast Quarter of Section 36. The well was subsequently drilled and completed as a producer on January 7, 1966. The total cost of drilling, completing, equipping and operating the well through the month of June, 1968 was $109,382.-42, as stipulated by the parties. Richardson has paid no part of these costs, nor has Clark incurred any expenses he would not otherwise have incurred or changed his position in any manner in reliance upon his assumption that the interest claimed by Richardson would be forfeited.

Richardson alleges that the 29.5% interest listed in the names of Vanderlaan and Miss-La-Tex under the 1960 Agreement was solely owned by the corporation, whereas, Clark alleges that Vanderlaan and Miss-La-Tex owned such interest jointly. The Court finds that this interest was owned jointly by Vanderlaan and Miss-La-Tex as tenants in common. The 1960 Agreement names Vanderlaan and Miss-La-Tex as owners of the 29.5% interest. A conveyance to two or more individuals is presumed to create a tenancy in common in the named individuals, absent evidence rebutting such a presumption. Sec. 834, Miss.Code of 1942, Rec.; see Wolfe v. Wolfe, 207 Miss. 480, 42 So.2d 438 (1949). While not technically a conveyance, the 1960 Agreement had the effect of a conveyance in establishing the rights of the parties to the lands in question. The Court is not convinced by evidence offered in rebuttal of the presumption of creation of a tenancy in common, although it considers the parol testimony offered by Richardson admissible to rebut such a presumption. Several objections were lodged to admissibility of this testimony. It is contended by Clark that a corporation's minutes are conclusive evidence of what was undertaken at a particular board of directors meeting. The Court finds, however, that parol testimony is admissible to supplement the minutes of a directors' meeting, absent a by-law or charter requirement of a written record. Burnett's Lumber & Supply Co. v. Commercial Credit Corp., 211 Miss. 53, 51 So.2d 54 (1951); Williams v. Williams Yellow Pine Co., 166

Miss. 803, 146 So. 143 (1933). Nonetheless, the only parol evidence offered of what transpired at any board meetings was that of an interested witness, and the Court does not find such testimony sufficiently persuasive to negate the existence of the common tenancy between Vanderlaan and Miss-La-Tex.

Further objection was made by Clark's attorneys to parol testimony by Vanderlaan offered to show that Vanderlaan told Clark that he owned no interest individually in the land in question. This testimony was alleged to be inadmissible under the doctrine of estoppel by deed and as a violation of the parol evidence rule. The doctrine of estoppel by deed, however, is inapplicable in this situation. Estoppel by deed bars a party from asserting a subsequently acquired title in derogation of his grant. Sec. 846, Miss. Code of 1942, Rec.; Strangi v. Wilson, 223 Miss. 122, 77 So. 2d 697 (1955); Lee v. Magnolia Bank, 209 Miss. 804, 48 So.2d 515 (1950); Meyers v. American Oil Co., 192 Miss. 180, 5 So.2d 218 (1941). Vanderlaan does not assert a title or interest in derogation of his grant, but his testimony is merely an explanation of the extent of his interest which was quitclaimed to Clark. The parol evidence rule does not bar Vanderlaan's testimony, because the testimony does not attempt to vary or contradict the terms of the conveyance from Vanderlaan to Clark; rather, it defines the interest quitclaimed, that is, it identifies the subject matter of the conveyance. Parol evidence is admissible for this purpose to supplement the terms of a writing. McElroy, Mississippi Evidence, Sec. 81, at 313 (1955). If parol evidence were not admissible to extrinsically show the interest conveyed by Vanderlaan, there would be no way to judicially determine what interest passed to Clark by the instrument in question, since the instrument merely conveyed all Clark's interest with no further description. Cf. Glover v. Falls, 120 Miss. 201, 82 So. 4 (1919); Ladnier v. Stewart, 38 So. 748 (Miss.1905). However, Vanderlaan's testimony was specifically contradicted by Clark, and the Court finds that Clark's payment of $2,000 to Vanderlaan for the conveyance of Vanderlaan's interest was in good faith and without knowledge of a disavowal of any personal interest on the part of Vanderlaan.

The Court thus finds as a fact that Miss-La-Tex and Vanderlaan jointly owned the lands in question; and alternatively, that Miss-La-Tex and its successors in interest, including Richardson, Vasser and Gay, are estopped to deny that Vanderlaan jointly owned the lands included in the 1960 Agreement. The recording of the 1960 Agreement with the lands in question listed in the names of Miss-La-Tex and Vanderlaan is equivalent to a representation by Miss-La-Tex that Vanderlaan did own a joint interest. Clark was entitled to rely on this representation and he did so rely, changing his position to his detriment by advancing $2000 for a conveyance by Vanderlaan of his interest under the 1960 Agreement. See Stokes v. American Central Ins. Co., 211 Miss. 584, 52 So. 2d 358 (1951); Martin v. Hartley, 208 Miss. 112, 43 So.2d 875 (1950); Peeler v. Hutson, 202 Miss. 837, 32 So.2d 785 (1947); Barron v. Federal Land Bank of New Orleans, 182 Miss. 50, 180 So. 74 (1938); Cummings v. Midstates Oil Corp., 193 Miss. 675, 9 So.2d 648 (1942). Clark is in the position of a bona fide purchaser for value of the Vanderlaan interest as it appears of record, without notice of any purported lack of interest on the part of Vanderlaan. As a bona fide purchaser Clark is entitled to rely on the record as it appears, and Miss-La-Tex and its successors are estopped to deny that the record accurately reflects the interests of the parties.

Richardson's attorneys argued that Vanderlaan was precluded from acquiring a joint interest in the property in question, asserting that this would be a violation of the fiduciary obligation which he owed to the corporation as its president. They allege that Vanderlaan's taking of an interest in the property would constitute diversion of a corporate

opportunity which is a breach of fiduciary duty under the doctrine of Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 89 So.2d 799 (1956). However, the Court finds no breach of fiduciary obligation on the part of Vanderlaan in securing an interest jointly with the corporation. Indeed, Vanderlaan had participated in his individual capacity in various other drilling operations on property adjoining the property involved in this cause. The Court finds no legal prohibition to Vanderlaan's owning the property interest here jointly with Miss-La-Tex, and finds no impropriety on his part in acquiring such interest.

■ Since the Court finds that Vanderlaan and Miss-La-Tex jointly owned the 29.5% interest in the Southeast Quarter of the Southeast Quarter of Section 36, it is necessary to determine what interest was conveyed by each of them in the transactions in question. On November 1, 1965, Vanderlaan signed an instrument conveying all of his interest in the Southeast Quarter of the Southeast Quarter of Section 36 to Noel D. Clark. The words used in the instrument, "convey, set over and disclaim said interest to Mr. Clark by virtue of this letter," are sufficient to convey all Vanderlaan's interest, although the instrument does not purport to be a deed. See Allen v. Boykin, 199 Miss. 417, 24 So.2d 748 (1946), where the words "acquit back" were held sufficient to convey certain mineral interests of the grantor. Moreover, Section 845 Miss.Code of 1942, Rec., provides that "a conveyance without any warranty shall operate to transfer the title in possession of the grantor as a quitclaim and release," and Section 846 provides that a conveyance of quitclaim and release is sufficient to pass all the interest of the person granting an interest in that manner.

■■ The failure to record this instrument does not affect its efficacy as between the parties to the instrument, nor does it prevent such an instrument from binding all subsequent purchasers who take either with notice of the instrument or who have not paid valuable con-

sideration. Section 868, Miss.Code of 1942, Rec. Thus the November 1, 1965, conveyance from Vanderlaan to Clark is fully effective to pass Vanderlaan's interest to Clark as between Vanderlaan and Clark. The instrument is further binding on Miss-La-Tex, Richardson, Vasser and Gay because they had notice of Vanderlaan's conveyance to Clark before acquisition of any instruments by them purporting to convey the interest in question. Clark's testimony shows that he informed Richardson and his attorney of the November 1, 1965 conveyance to him by Vanderlaan prior to November 4, 1965, when Miss-La-Tex secured its conveyance from Vanderlaan. The November 9, 1965 letter agreement between Richardson and Miss-La-Tex further evidences this notice because the payment of the consideration to Miss-La-Tex by Richardson for the conveyance was expressly conditioned on Clark's recognition of an interest in Richardson or on the working out of a satisfactory drilling arrangement with Clark. Furthermore, neither Miss-La-Tex nor Richardson paid valuable consideration for their conveyances. Miss-La-Tex advanced only one dollar for its conveyance from Vanderlaan. Such consideration is not a "valuable consideration" within the meaning of Section 868, Miss.Code of 1942, Rec., so as to entitle a grantee the benefit of the recording statute. Smith County Oil Co. v. Jefcoat, 203 Miss. 404, 33 So.2d 629 (1948). Nor did Richardson advance valuable consideration to Miss-La-Tex for its conveyance to him. Payment of the consideration was conditional, and the conditions were never fulfilled so that Richardson actually advanced nothing to Miss-La-Tex. The Mississippi Supreme Court has held that the mere giving of security for alleged valuable consideration is not such consideration as to qualify one as a bona fide purchaser for value within the meaning of the recording statute. Martin v. Russell, 193 Miss. 825, 11 So.2d 434 (1943). Richardson's agreement here to pay $10,000 for the conveyance if Clark recognized his interest is equivalent to the giving of

security for valuable consideration, that is, the $10,000 delivered to Miss-La-Tex's attorney was security for his promise to pay *if* Clark recognized his interest. Clark did not recognize his interest, so Richardson in effect did no more than advance security for alleged valuable consideration which did not materialize.

■ The recitation in the November 5, 1965 conveyance from Vanderlaan to Miss-La-Tex that the conveyance was in conformity with their prior verbal agreement is ineffectual to vest any rights in Miss-La-Tex as of the date of the alleged verbal agreement. Property interests in Mississippi may not be conveyed by parol. Sec. 832, Miss.Code of 1942, Rec., Smith v. Taylor, 183 Miss. 542, 184 So. 423 (1938).

Noel Clark is thus vested with all of Vanderlaan's interest in the Southeast Quarter of the Southeast Quarter of Section 36 by virtue of the November 1, 1965 conveyance from Vanderlaan. The subsequent conveyance by Vanderlaan to Miss-La-Tex vested no interest in this property in the corporation, and Richardson thus acquired none of Vanderlaan's individual interest when Miss-La-Tex purportedly assigned its interest in the property in question to Richardson on November 9, 1965. Since Richardson acquired none of Vanderlaan's interest, his subsequent assignment to Vasser and Gay was ineffective to vest any of Vanderlaan's interest in them.

■ In order to determine what interest, if any, Miss-La-Tex transferred in the various transactions involved here, it is essential to determine the status of the corporation under Mississippi law after its suspension for failure to pay franchise taxes. United States v. United States Vanadium Corp., 230 F.2d 646 (10th Cir. 1956), cert. denied, 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466 (1956). Section 9327, Miss.Code of 1942, Rec., provides that a corporation suspended for nonpayment of taxes may be reinstated by payment of the taxes due within 12 months of the date of suspension. If

the taxes are not tendered within 12 months, the corporation thereafter "in so far as being a going concern, with rights to exercise powers originally granted * * * shall be considered as non-existent * * *" Miss-La-Tex was suspended on March 5, 1963, and the delinquent taxes were not paid until November 5, 1965, a date well past 12 months from the original suspension date. Miss-La-Tex thus falls squarely within the provision of Section 9327 which declares a corporation "non-existent" for failure to pay delinquent taxes within 12 months of the date of its suspension. Apparently there are no Mississippi cases interpreting the meaning of this provision of Section 9327. However, the Court considers the statute plain and interprets it to mean that after lapse of the prescribed period the corporation may not validly consummate any transaction. See 19 Am.Jur.2d, Corporations, Sec. 1648, at 998 (1965):

"The forfeiture of a corporate charter for failure to comply with the laws of the state has been held to effect a dissolution of the corporation, just as the extinction of its charter for any cause effects a dissolution. It is said that, upon the forfeiture of the charter of a corporation, it ceases to exist, and it has no power thereafter to do anything or to authorize anyone to do things for it * * *"

Thus Vanderlaan's disavowal of intent to participate in the well proposed by Clark on behalf of the corporation was ineffective. Likewise, the conveyance on November 9, 1965 by Miss-La-Tex to Richardson was ineffective to transfer any interest which the nonexistent corporation previously owned in the questioned land.

■ Richardson's attorneys argue that there are no self-executing provisions in Section 9327 which operate to make the corporation "non-existent", absent a judicial determination in an action brought for that purpose, and furthermore, that only the State could institute

such a proceeding. However, the question of whether the provision is self-executing or not depends upon legislative intent. 19 Am.Jur.2d, Corporations, Sec. 1615, at 975 (1965). The Mississippi Legislature in Section 9327 apparently contemplated that nonexistence of the corporation upon failure to pay taxes within 12 months of suspension would be effected automatically, without initiation of judicial proceedings to decree forfeiture of the corporate charter. The statute plainly provides that the corporation "shall be considered as non-existent; and the disposition of assets, and winding up of the affairs of the organization may be accomplished in such manner as provided by law." Had the legislature deemed some other act requisite to dissolution of the corporation, it would certainly have so provided.

Richardson's attorneys also argue that, even though Miss-La-Tex be deemed nonexistent as a de jure corporation, it retained the ability to act as a de facto corporation. However, when the dissolution of a corporation has been effected, or it has forfeited its charter, there can be neither a de facto nor a de jure corporation, that is, there can be no color of corporate existence after the corporate death. See 19 Am.Jur.2d Corporations, Sec. 1648, pp. 999–1000 (1965), and cases cited therein.

Since it has been determined that Miss-La-Tex ceased to exist as of March 5, 1964, it is necessary to determine the disposition of the corporation's interest in the land in question. Section 5354, Miss.Code of 1942, Rec., provides that "[o]n the dissolution of any corporation, either by judgment or otherwise, all its real and personal estate shall be vested in the stockholders therein, in their respective proportions, who shall hold the same as tenants in common * * *" Under this section, the stockholders of Miss-La-Tex owned the corporation's property as of its date of dissolution as tenants in common. The application of the statute is not limited to cases of dissolution by judgment, but applies as well to dissolution "otherwise"

than by judgment. Although there are apparently no Mississippi cases interpreting Section 5354, the Supreme Court of Tennessee has held that where there is a forfeiture of a corporation's charter, and no statute provides for continuing the existence of the corporation after such forfeiture, the property of the defunct corporation passes to the stockholders, subject to outstanding claims of the corporation's creditors. Jesse A. Bland Co. v. Knox Concrete Prods., Inc., 207 Tenn. 206, 338 S.W.2d 605 (1960); 19 Am.Jur.2d, Corporations, Sec. 1659, pp. 1006–1007 (1965). There is no provision for continuing the corporate existence after it is deemed "non-existent" under Section 9327, and thus the case here falls within the principle of the *Bland* case. The Court finds that the intention of the Mississippi Legislature in enacting Section 5354 was that it be applicable to a case of nonexistence for failure to comply with state law, as well as to dissolution of the corporation, consistent with the holding of the Tennessee court in the *Bland* case. The cessation of corporate existence under Section 9327 destroyed the stock of the corporation as such and substituted in the stockholders the thing which the stock represented, that is, an interest in the corporate property. See 19 Am.Jur.2d, Corporations, Sec. 1660, p. 1008 (1965). As of March 5, 1964, the date Miss-La-Tex ceased to exist, Vanderlaan owned 229,980 shares of Miss-La-Tex stock, of the total 343,733 shares of corporate stock outstanding. At this time Miss-La-Tex owned jointly with Vanderlaan a 29.5% interest in the operating rights in the Southeast Quarter of the Southeast Quarter of Section 36. When Vanderlaan conveyed all his interest in this property to Clark on November 1, 1965, he also conveyed that interest which vested in him as a stockholder of Miss-La-Tex, that is, 229,980/343,733 of Miss-La-Tex's undivided interest in 29.5% of the Southeast Quarter of the Southeast Quarter of Section 36, or 9.868%. This interest which vested in Vanderlaan as a result of the cessation of the corporate existence and

the interest which Vanderlaan owned individually equal 24.6187% of the 29.5% interest owned by Vanderlaan and Miss-La-Tex jointly under the 1960 Agreement. Clark thus owns outright this 24.6187% interest as a result of the November 1, 1965 conveyance. The rights of the Miss-La-Tex stockholders other than Vanderlaan were not in controversy in this action, and the Court makes no ruling as to their interests in the well drilled in the Southeast Quarter of the Southeast Quarter of Section 36, nor as to their right to be given notice of intent to drill and an opportunity to participate in any proposed wells.

██ As to the 6.25% interest of Fenton and the 6.25% interest of Burleson under the 1960 Agreement, the Court finds that these interests vested in Clark because Richardson, as assignee of Fenton and Burleson, failed to comply with the 1960 Agreement in furnishing security satisfactory to Clark for the drilling of the well. The 1960 Agreement required that a person electing to participate in a proposed well must "advance to the Operator, its or their share of the estimated cost of such drilling operation, or secure Operator in a manner satisfactory to Operator." It is undisputed that Richardson, Vasser and Gay did not advance actual costs to Clark under the 1960 Agreement. The Court finds that the letter of credit furnished by Richardson to Clark in an attempt to comply with the second clause of the 1960 Agreement quoted above did not satisfy that requirement. The letter of credit required that Richardson approve the invoices for drilling and completion costs before it could be drawn on. Clark refused to accept the letter of credit on these terms, alleging that it would allow Richardson to "ride the well down." Clark's attorneys argued that under the 1960 Agreement Clark's determination of whether security was satisfactory or not was conclusive, while Richardson's attorneys argued that Clark had to act reasonably in accepting or rejecting security tendered by those electing to participate, and that in rejecting the letter of credit offered by Richardson, Clark acted unreasonably. The Court finds that the 1960 Agreement contemplated that the subjective determination of the Operator be conclusive as to the adequacy of security. The agreement specified that a party electing to participate should advance cash; advancement of security was an alternative method of compliance. It was not unreasonable for the parties to require that the Operator himself be satisfied with the security tendered by a party electing to participate, rather than judge the adequacy of such security by an objective standard of reasonableness, particularly since the agreement contemplated advancement of cash—the best possible security—as the prime method of performance. Moreover, the 1960 Agreement is plain in requiring security "satisfactory to Operator," and does not in any way indicate that reasonable security only must be tendered. Even if the 1960 Agreement were interpreted to require Clark to accept the tender of a reasonable security, the Court finds that Clark did not act unreasonably in rejecting the security tendered here. Clark proposed to drill a Wilcox well which would have been completed in a short period of time. He should not be forced to wait on Richardson's approval of invoices before resort to the letter of credit for Richardson's portion of the drilling costs, when such a short space of time was contemplated for completion of the well.

██ Richardson failed to advance cash or security satisfactory to the Operator—Clark—and in so doing failed to comply with the 1960 Agreement. This failure to comply with the contract's requirements for election to participate forfeited any interest Richardson might have in the well drilled by Clark. The Mississippi Supreme Court reached such a result in McKendrick v. Lyle Cushion Co., 234 Miss. 325, 104 So.2d 295, suggestion of error overruled, 234 Miss. 325, 105 So.2d 480 (1958). There a person electing to participate was required to

advance his portion of the costs. A party who desired to participate, instead of advancing such costs, offered to permit the proposed driller to withdraw funds interpleaded into court to cover his share of the costs. The Court held that the interpleaded funds were not in possession of or under the control of the drillers and that the offer was thus insufficient to comply with the contract requirement of advance of costs. This failure to comply with the contract terminated the interest in the proposed well of the party who desired to participate. In the case at bar Richardson failed to advance costs or comply with the contract's requirement of a security advance satisfactory to the Operator. Richardson's interest in the well drilled by Clark thus terminated.

Richardson cannot rely on the dispute over his ownership of an interest in the property in question as an excuse for his failure to comply with the contract's requirements. Parties to contracts are bound to perform in accordance with their terms, and are not excused because performance subsequently becomes unexpectedly burdensome or even, in some cases, impossible. Browne & Bryan Lumber Co. v. Toney, 188 Miss. 71, 194 So. 296 (1940); Piaggio v. Somerville, 119 Miss. 6, 80 So. 342 (1919).

The Court holds: (1) that Vanderlaan and Miss-La-Tex jointly owned, as tenants in common, a 29.5% interest in the property in question; (2) that the November 1, 1965 conveyance from Vanderlaan to Clark was operative to vest all of Vanderlaan's interest in the property in question in Clark; (3) that Miss-La-Tex became nonexistent as a corporation on March 5, 1964, and thus any transactions conducted by the corporation thereafter were ineffective; (4) that the corporation's property vested in its stockholders as tenants in common when the corporation ceased to exist; and (5) that Richardson, Vasser and Gay failed to comply with the 1960 Contract of Agreement in attempting an election to participate in the well proposed by Clark

and thus forfeited to Clark the 6.25% interest acquired from Burleson and the 6.25% interest acquired from Fenton.

Clark thus is vested with the operating rights in the Southeast Quarter of the Southeast Quarter of Section 36 which were vested in Fenton, Burleson, and Vanderlaan individually as a result of the 1960 Agreement. This represents 27.25% of the 42% interest in controversy in this case. Clark is further vested with the interest which Vanderlaan became vested with as a stockholder of Miss-La-Tex as a result of the cessation of existence of that corporation. This represents 229,980/343,733 of Miss-La-Tex's 14.75% interest (one-half of the 29.5% interest owned jointly by Miss-La-Tex and Vanderlaan), or 9.868%. Clark is thus vested with a total of 37.118% of the operating rights of the 42% interest controverted in this action. The remaining interest is subject to the claims of the stockholders of Miss-La-Tex, other than Vanderlaan, as of March 5, 1964. Since these other parties were not before the Court, their interests are not affected by this opinion.

The awarding of fees and costs in favor of an interpleading party against the losing claimants or against the funds interpleaded into Court is a matter within the discretion of the Court. Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp., 306 F.2d 188 (9th Cir. 1962); Hartford Acc. & Indem. Co. v. Natchez Investment Co., 161 Miss. 198, 132 So. 535, 135 So. 497 (1931).

The interpleader here, Chevron Oil Company, is entitled to reasonable attorneys' fees in the amount of $2,500, as well as court costs previously paid in the amount of $344.20. These fees and costs are charged against the disputed funds interpleaded and a lien is impressed upon the oil and gas lease interests tendered into Court and the proceeds of the sale of oil therefrom to secure such costs and fees.

Judgment will be entered in accordance with this opinion.