PATTERSON, Justice:
Dr. Ralph Hughes, appearing pro se, appeals from a decree of the Chancery Court of Pontotoc County. The basis of his appeal is that the entire opinion of the lower court “is predicated upon a finding which is erroneous as a matter of law that there was no deed executed or delivered by the county prior to October 3, 1961.” We affirm.
The appellant’s bill of complaint sought cancellation of certain “restrictions” in a deed executed by Pontotoc County as clouds upon his title to five and one-half acres of land. The complainant alleged that the Board of Supervisors, through its resolution of June 6, 1961, obligated the county to sell the land to him without restriction. He alleged that immediately after the resolution was entered on the minutes, he paid the consideration of $520 to the county, but that he did not receive his deed until October 3, 1961, which contained the “restrictions” here sought to be cancelled. The complainant alleged further that even though this deed was not in accord with the prior resolution of the board and with the agreement of the parties, nevertheless, the complainant did in fact begin to build a *439 hospital on the property within three years from its date, thus complying with its terms.
The defendant, Pontotoc County, in its answer admitted the recitations of the minutes of June 6, 1961, but denied that the resolution contained the description of the land sued upon. It denied payment of the consideration immediately after June 6, 1961, and averred that the payment was made upon delivery of the deed with the restrictions on October 3, 1961. It further averred that the deed was delivered in accord with a resolution of the board of supervisors which preceded its delivery. A copy of this resolution was attached to the answer and is, less its formal parts and description of the land, as follows:
OCTOBER 3, 1969
WHEREAS, this Board did on the 6th day of June, 1961 pass an order which was entered in the minutes in Book 14 at page 390 adjudicating that certain property owned by the county was no longer needed for county purposes and directed that same be sold to Dr. Ralph Hughes on which he was to build a hospital. * *
WHEREAS, there was found to be a defect in the description given of said 5.5acres of land, now therefore it is now again adjudged and found that said 5.5 acres of land is no longer needed for county purposes and the same is described as follows:
******
WHEREAS, Dr. Ralph Hughes has offered to pay for said above 5.5 acres of land the sum of $520.00 and within three (3) years from the date hereof to erect thereon a Hospital and allied buildings and a residence, now
******
It is further ordered that the deed shall show the complete consideration for the sale of said property and that these restrictions be placed in said deed, and further said deed shall be a Quit Claim Deed, That Dr. Ralph Hughes is to pay Pontotoc County, Mississippi, the sum of $520.00 and that if a Hospital is not begun on said property within three (3) years from the date of this deed then this 5.5acres shall revert back to Pontotoc County, Mississippi. * * *
******
The county pled estoppel, asserting that the complainant by accepting the deed is now estopped to deny its terms. A cross bill was filed which alleged that the complainant had not in good faith begun the construction of a hospital within the three-year period, wherefore, it prayed that title be adjudged to have reverted to the county.
Upon trial, the resolutions of the board of supervisors of June 6, 1961, and October 3, 1961, were introduced into evidence as was the deed which contained the restrictions set forth in the resolution of October 3, one of which is:
It is further agreed between the parties that if a Hospital is begun in good faith within 3 years from the date of this deed and if same thereafter is finished and put into operation at that time all of these restrictions shall become void and from the time said hospital begins operations said restrictions are lifted and from then on said property shall be owned with no further restrictions placed on the use of said 5.5acres of land.
The wife of the appellant testified that the deed was ready for delivery on October 2, 1961, and that she went to the chancery clerk’s office at the request of her husband to obtain it. She further testified that she then paid the consideration of $520 and that while the clerk was preparing a receipt, she perused the deed and observed no restrictions in it. Upon being given the receipt, she left the deed with the clerk to be recorded.
The complainant testified that on the date of delivery he requested an attorney to examine the deed to make sure it was properly drawn. Thereafter, he was advised that the description was erroneous, *440 whereupon, he directed the attorney to have it corrected and filed for record. Subsequent to its recordation his wife obtained the deed and placed it in their safety deposit box. He testified further that he was not aware of the restrictions in the deed until approximately two years later when he attemped to secure a loan to finance the hospital.
The evidence on behalf of the county, additional to the minutes of the board of supervisors and the deed, was that construction of the hospital had not begun in good faith in accord with the terms of the conveyance. On rebuttal, Dr. Hughes testified that some drainage tile work had been done on the site as well as some “bush hog” and “bulldozer” work. Thereafter, the court viewed the property upon motion of the cross-complainant.
In its opinion the lower court found that no deed was ever executed pursuant to the order of June 6, 1961, and that the resolution of the board of supervisors of October 3, 1961, rescinded the prior order and that the deed delivered to the complainant contained the provisions requiring the grantee to commence a hospital within three years from its date or suffer reversion of title. The court then held that the evidence, including its own inspection of the property, failed to prove that a hospital had been commenced within three years, whereupon, the court decreed that the title to the property had reverted to the county.
The contention of the complainant on appeal is that the court erred in finding there was no deed executed or delivered by the county prior to October 3, 1961. His argument is premised on the testimony of his wife that the deed was delivered to her on October 2, 1961, containing no restrictions, which was corroborated by the receipt of the chancery clerk on like date and is uncontradicted and must be accepted by the court. He cites in support thereof Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 308, 110 So.2d 359, 361 (1959), wherein we stated:
Moreover, evidence which is uncon-tradicted or undisputed should ordinarily be taken as true by the trier of facts, if it is not inherently improbable or unreasonable. It cannot be arbitrarily disregarded.
as well as Ryals v. Douglas, 205 Miss. 695, 722, 39 So.2d 311, 312 (1949), where Headnote No. 7 states:
The uncontradicted testimony of witness who is not impeached must be accepted as true.
There can be little doubt that these general concepts of evidence are valid and express exemplary rules of law. However, we are unable to agree with the appellant’s argument that the evidence relied upon is in fact uncontradicted. It is in fact controverted by the resolution of the board of supervisors of October 3, 1961, as well as by the deed of the same date. The terms of the deed proclaim that it was signed on October 3, 1961, and the acknowledgment thereon states that the deed was signed and delivered on the day and year mentioned. In Arnold v. Byrd, 222 So.2d 410, 411 (Miss.1969), a case concerning the proper execution of a deed, we stated:
On appeal to this Court, the appellant, grantee in the deed, contends that the Chancellor did not give proper eviden-tiary weight to the strong presumption of the jurat of the attesting officer in the deed. It is true that there is a presumption that a certificate of acknowledgment states the truth; moreover, the introduction of a properly acknowledged deed into evidence establishes a prima facie case that such deed is genuine. Such an acknowledgment can only be overthrown by evidence so clear, strong and convincing as to exclude all reasonable controversy as to the falsity of the certificate.
Indulging the presumption that a certificate of acknowledgment states the truth and can only be overthrown by evidence so clear, strong and convincing as to exclude all *441 reasonable controversy as to its falsity, we cannot state that the chancellor was manifestly wrong in his finding that the deed was delivered on October 3, 1961. As mentioned, we do not agree with the appellant that the evidence was uncontradicted, it being our opinion that there was an issue of fact properly presented to the chancellor for his consideration and not being manifestly erroneous in its determination we will affirm the decree of the lower court.
Moreover, the appellant accepted delivery of the deed and had it recorded. He therefore is subject to its terms absent any evidence that he was fraudulently induced not to inspect it. In American Oil Co. v. Williamson, 154 Miss. 441, 445, 122 So. 488, 489 (1929), we held:
It may be, though the evidence relative thereto is in conflict, that the appel-lee did not know, when he accepted the deed, of the restrictions therein on the use of the property, but no relief can be granted him here for that reason; his failure to read the deed not having been induced by any fraudulent conduct on the part of the appellant. Gunter v. Henderson Molpus Co., 149 Miss. 603, 115 So. 720; Continental Jewelry Co. v. Joseph, 140 Miss. 582, 105 So. 639; Coats & Sons v. Bacon, 77 Miss. 320, 27 So. 621. “A person may not plead ignorance of the covenants of a deed executed to him after it has been accepted and recorded, as a ground for defeating the force and effect of such covenants, in the absence of any fraud practiced by the grantor preventing the grantee from familiarizing himself with the deed.” 18 C.J. 226.
In view of this authority we conclude that the appellant by his acceptance of the deed is bound by its terms, including the restrictions.
The remaining question is whether there was sufficient evidence to sustain the chancellor in his finding that construction of the hospital was not begun in good faith. The evidence in this regard was conflicting. The chancellor personally inspected the premises and determined that construction had not commenced. Again, we cannot state that the chancellor was manifestly wrong, particularly since the record reflects that he viewed the premises. Blair v. McMillion, 171 Miss. 33, 156 So. 519 (1934); Glover v. Falls, 120 Miss. 201, 82 So. 4 (1919).
The factual situation in this case has caused the Court much concern, but restricting the opinion as we do to the legal theories raised below, we are of the opinion that the decree of the lower court should be affirmed.
Affirmed.
GILLESPIE, P. J., and JONES, SMITH and ROBERTSON, JJ., concur.