## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CP-00124-SCT

*ROMAIN POWELL WILSON*

*v.*

*GREYHOUND BUS LINES, INC.*


| | |
|---|---|
| DATE OF JUDGMENT: | 1/9/2001 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | JOHN BENTON CLARK |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED AND JUDGMENT FOR STATUTORY PENALTY ENTERED - 09/05/2002 |
| MOTION FOR REHEARING FILED: | 10/1/2002 |
| MANDATE ISSUED: | |


### BEFORE SMITH, P.J., CARLSON AND GRAVES, JJ.

### CARLSON, JUSTICE, FOR THE COURT:

¶1. Feeling aggrieved by the circuit court's entry of its Judgment Confirming Arbitration Award and Compelling Settlement, Romain Powell Wilson (Wilson) has appealed to this Court, pro se. Greyhound Bus Lines, Inc. (Greyhound) has cross-appealed, requesting attorneys' fees and costs based on Wilson's actions. We find no error on the direct appeal or the cross-appeal. We affirm the judgment and the circuit court's refusal to award attorneys' fees and costs to Greyhound. However, we enforce the mandatory 15% statutory penalty required by Miss. Code Ann. § 11-3-23 (2002), on the already satisfied judgment by granting judgment here to Greyhound against Wilson for $6,975.

### FACTS AND PROCEEDINGS BELOW

¶2. On May 3, 1995, Wilson was involved in a lane-changing collision with a Greyhound bus on U.S. Highway 90 in Ocean Springs. She consulted an attorney, who referred her to a second attorney, who in fact filed the subject lawsuit. The second attorney recommended a $5,000.00 settlement, which evidently so upset Wilson that she fired the second attorney and filed a bar complaint against him. Wilson then

discussed her case with a third attorney who referred her to a fourth attorney, Walter L. Nixon, Jr., who became her attorney of record for the litigation. Wilson, through counsel, filed her Complaint for Damages in the Circuit Court of Jackson County, Mississippi, on March 4, 1996. Supposedly by agreement of the parties and counsel, this case went to binding arbitration and a hearing was conducted before the arbitrator, Wynn E. Clark, on June 29, 2000. The arbitrator subsequently entered his 13-page "Arbitration Award", dated September 19, 2000, which awarded Wilson $46,500 in damages. After Wilson refused to accept the award and sign the necessary release documents, Greyhound interpled its check for $46,500 into the registry of the circuit court and filed a motion to confirm arbitration award and compel settlement, which motion was heard by the circuit court on November 2, 2000. Although she disputes understanding the effect of her actions, Wilson admits that she signed a letter dated February 18, 1999, addressed to Nixon. The letter, which was received into evidence at the circuit court evidentiary hearing, stated:

> You are hereby authorized to enter into binding arbitration of the above-captioned claim with an arbitrator to be agreed upon between you and a representative of Greyhound Lines. I do not desire that a counter offer be made to Greyhound at this time.

¶3. Likewise received into evidence at the circuit court hearing of November 2, 2000, was a letter dated June 23, 2000, from one of Greyhound's attorneys to Nixon. The letter discussed the proposed procedures at the upcoming arbitration hearing and also discussed a "high/low" settlement agreement which would not be revealed to the arbitrator. According to the letter, in the event that the arbitrator's award was less than $30,000, Greyhound would pay $30,000; if the arbitrator's award was over $100,000, Greyhound would pay $100,000; if the arbitrator's award was between $30,000 and $100,000, Greyhound would pay the amount of the award. Again, although disputed by Wilson, Nixon, who was allowed by the trial court to withdraw as Wilson's counsel prior to the circuit court hearing, testified at the hearing that Wilson approved of the terms of the binding arbitration hearing and the "high/low settlement agreement." At the circuit court evidentiary hearing, the arbitrator testified that prior to commencing the arbitration hearing on June 29, 2000, he explained to Wilson and all present that binding arbitration meant that the parties were "foregoing their right to a jury trial," and that he would probably end up making a decision that "may not please everybody."

¶4. Also at the evidentiary hearing before the circuit court, a sworn affidavit signed by Virginia S. Myers James, also known as Jenny Myers (Myers), was received into evidence. Myers had worked as a paralegal with several Gulf Coast attorneys, including Nixon, but by the time of the evidentiary hearing of November 2, 2000, Myers had moved to Colorado. Wilson stated that Myers was someone whom she (Wilson) liked and trusted. The sworn affidavit of Myers stated in pertinent part:

> That she [Myers] performed certain paralegal services for Attorney Walter L. Nixon, Jr., and worked on a matter involving his client, Romain Wilson. That during the process of reviewing and organizing that case file, Affiant [Myers] distinctly remembers seeing the contingency fee contract for 40% which was signed by Mrs. Wilson.

> That in February, 1999, Affiant attended a meeting between Attorney Nixon and his client, Romain Wilson, to review Mrs. Wilson's pending lawsuit.

> That during that meeting in his office, Mr. Nixon explained to Mrs. Wilson the entire process of binding arbitration, all its ramifications and her rights. He further explained in detail the fact that the decision of the arbitrator would be final and binding and that once a decision was reached there would

be no appeal and no subsequent court trial.

Affiant distinctly recalls that Mrs. Wilson stated that she didn't think she could go to trial because of her health problems and that such a trial would be too stressful. At the conclusion of the meeting Mrs. Wilson agreed to binding arbitration and signed a statement in Affiant's presence to that effect.

¶5. At the conclusion of the evidentiary hearing, the trial court took the matter under advisement, and on January 9, 2001, the trial court entered its Judgment Confirming Arbitration Award and Compelling Settlement. Also as revealed in the 13-page Arbitration Award which memorialized the arbitration hearing, and as revealed at the circuit court evidentiary hearing, Wilson had numerous pre-existing injuries and conditions dating back to the early 1980's, and she had numerous surgical procedures. Although Greyhound initially denied liability in the lawsuit, it admitted liability for the purposes of the arbitration hearing; therefore, there was no issue as to liability or contributory negligence. However, the record clearly reveals that Wilson's numerous pre-existing injuries/conditions and surgical procedures affected the award of the arbitrator. The trial court's judgment confirmed the arbitration award, enforced the settlement agreement, directed Wilson to execute the release documents and satisfaction of judgment, directed the net proceeds to be distributed to Wilson, after which the case would be dismissed, with prejudice, and denied Greyhound's request for attorneys' fees and costs. The judgment further directed the Circuit Clerk of Jackson County to take the necessary action to effectuate the judgment in the event that Wilson did not take action in accordance with the provisions of the judgment. Indeed, based on Wilson's inaction, the Circuit Clerk was eventually required to sign the release and satisfaction of judgment and to disburse the settlement proceeds. After deduction for attorney's fees (for Wilson's attorney), medical liens and court costs, Wilson received approximately $23,000.

¶6. It is from the trial court's entry of the Judgment Confirming Arbitration Award and Compelling Settlement that Wilson appeals to us because of her dissatisfaction with the case being submitted to binding arbitration and with the amount of the arbitration award. Wilson maintains that she did not understand arbitration and that she was dissatisfied with the whole arbitration procedure, including the amount of the award. Greyhound cross-appeals from the trial court's failure to award it attorneys' fees and costs.

## DISCUSSION

¶7. Wilson's pro se brief raises several issues which can be summarized as follows: (1) The circuit court should be reversed; (2) an attorney not of her choosing or under contract took four years to bring any legal action in her case; (3) the circuit court was unconcerned about the length of time required for arbitration, which was done against her wishes; (4) the circuit court denied her proposed record corrections for appeal purposes; (5) the binding arbitration was the first legal action taken by the attorneys and was done without her consent; and, (6) the circuit court erred in that Greyhound was never shown to be responsible for the accident.

¶8. Notwithstanding Wilson's claims, which are without merit based on the record before us, we determine the primary issue on Wilson's direct appeal to be as follows:

**I. WHETHER THERE WAS ANY ERROR REACHING THE ABUSE OF DISCRETION STANDARD IN THE TRIAL COURT AND WHETHER THE ARBITRATION WAS BINDING ON WILSON**.

¶9. In *Illinois Cent. R.R. v. Travis*, 808 So. 2d 928, 931 (Miss. 2002), we stated: "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence, *see City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000); *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss.1993); *Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd.*, 613 So.2d 864, 872 (Miss.1993); *Allied Steel Corp. v. Cooper*, 607 So.2d 113, 119 (Miss.1992). "This Court will not disturb those findings unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. City of Bay St. Louis*, 467 So.2d 657, 661 (Miss. 1985). Additionally, in arbitration cases, we have held that the scope of review is extremely limited. "The scope of judicial review of an arbitration award is quite narrow, and 'every reasonable presumption will be indulged in favor of the validity of arbitration proceedings.'" *Craig v. Barber*, 524 So.2d 974, 977 (Miss. 1988) (quoting *Hutto v. Jordan*, 204 Miss. 30, 41, 36 So.2d 809, 811 (1948)). "[A]ll persons...may, by instrument of writing, submit to the decision of one or more arbitrators any controversy which may be existing between them, which might be the subject of an action ...." Miss. Code Ann. § 11-15-1 (1972). "A person shall not act as an arbitrator where he is interested in the subject matter in dispute...." *Id*. § 11-15-3. "To entitle an award to be enforced...it must be made in writing, and be signed by the arbitrators...." *Id*. § 11-15-19.

¶10. Miss. Code Ann. § 11-15-23 is particularly applicable:

> Any party complaining of an award may move the court to vacate the same upon any of the following grounds:
>
> (a) That such award was procured by corruption, fraud, or undue means;
>
> (b) That there was evident partiality or corruption on the part of the arbitrators, or any one of them;
>
> (c) That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent or material to the controversy, or other misbehavior by which the rights of the party have been prejudiced;
>
> (d) That the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual final, and definite award on the subject matter was not made.

¶11. Case law describing our limited scope of review in arbitration awards upheld at the trial court level dates back over a century.

> It is not legitimate, therefore, in exceptions to the award, to inquire into the original merits in favor of one party or the other, or to show that in the evidence the award ought to have been different or that the law of the case was misconceived or misapplied, or that the decision, in view of all the facts and circumstances, was unjust.

*Hutto v. Jordan*, 204 Miss. 30, 36, 36 So.2d 809, 811 (1948); *Jenkins v. Meagher*, 46 Miss. 84, 93 (1871).

¶12. In *Hutto v. Jordan*, 204 Miss. 30, 36, 36 So. 2d 809, 811 (1948), we held that the only grounds for setting aside an arbitration award are prescribed by statute:

> Errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators,

are insufficient to invalidate an award fairly and honestly made. Nothing in the award relative to the merits of the controversy as submitted, however wrongly decided, is ground for setting aside an award in the absence of fraud, misconduct or other valid objections ("other valid objections" defined in the opinion by statutes.)

¶13. Although a case involving arbitration pursuant to a home renovation contract applying Miss. Code Ann. §§ 11-15-101 et seq., one of our prior decisions offers guidance here. In *Craig v. Barber*, 524 So. 2d 974, 977 (Miss. 1988), we opined that "[o]ur limited scope of review . . . echoes our century old limitation upon judicial review of an arbitration award . . . . If anything, the scope of judicial review is much *narrower*." In *Craig*, we said the *only* bases for refusal to enforce an arbitration award are those found in Miss. Code Ann. § 11-15-133(1). The same reasoning applies to our application of Miss. Code Ann. § 11-15-23 in the case before us today.

¶14. Additionally, the "articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *Hutto*, 204 Miss. at 42.

¶15. A thorough review of the record before the Court reveals no error approaching abuse of discretion by the trial judge. Additionally, as we have held in prior case law, we indulge every reasonable presumption in favor of the arbitration's validity. The validity of the arbitration in the case sub judice is unquestionable. The Circuit Court of Jackson County had personal and subject matter jurisdiction, as well as venue, as Wilson was domiciled in Jackson County and the accident giving rise to the claim occurred in Jackson County. Notwithstanding Wilson's testimony at the circuit court hearing to the contrary, the circuit judge was certainly justified in finding that based on the testimony of Nixon, Myers and arbitrator Clark, Wilson gave her chosen attorney express authority to enter into binding arbitration (Miss. Code Ann. § 11-15-1). There was no showing in the record of partiality by the attorney arbitrator, as would be required by Miss. Code Ann. § 11-15-23 to invalidate an arbitration award. The arbitration award was reduced to writing, in a very thorough opinion by Wynn Clark, which went beyond what was statutorily necessary (Miss. Code Ann. § 11-15-19). The trial court did not abuse its discretion by denying Wilson's proposed record corrections. Wilson did not comply with the requirements of M.R.A.P. 10(a), nor were the proposed record changes properly before the court as part of the original record. Judge Harkey, in his opinion denying the record changes stated, "Since Plaintiff's changes deal with factual disputes and quibbles rather than matters of record, nor were the proposed additions properly designated, same are improper subjects to be included in the appeal of this case." The comment to M.R.A.P. 10 states "The purpose of the Rule is to permit and encourage parties to include in the record on appeal only those matters material to issues on appeal." We see nothing in the record that points to Judge Harkey's findings regarding this issue rising to abuse of discretion.

¶16. Finally, there is absolutely no showing of "corruption, fraud, or undue means," (Miss. Code Ann. § 11-15-23). As we held in *Hutto* and *Craig*, an arbitration award may be overturned by the reviewing trial court ***only*** if the elements of the applicable statute are present. In the case sub judice, the record is totally devoid of any evidence which would cause the arbitration award to be vacated pursuant to Miss. Code Ann. § 11-15-23 (a)-(d). Additionally, our standard of review in such cases is extremely narrow. Accordingly, we find no abuse of discretion by the trial court.

## II. WHETHER THE TRIAL COURT ERRED IN NOT AWARDING GREYHOUND

### ATTORNEYS' FEES AND COSTS.

¶17. In its cross-appeal, Greyhound seeks an award of attorneys' fees and costs from Wilson "based on her unreasonable and unjustifiable refusal to honor the binding arbitration and settlement agreement," and in raising this issue Greyhound asserts that the trial court erred in failing to assess Wilson with attorneys' fees and costs in favor of Greyhound. While Greyhound's Amended Motion to Confirm Arbitration Award and Compel Settlement contained a request for attorneys' fees and costs "to be deducted from the proceeds of the settlement check," this issue consumes only a few lines of the overall transcript of the trial court proceedings. At the conclusion of the circuit court evidentiary hearing, the following exchange occurred between Greyhound's attorney and the trial judge:

> BY MR. CLARK:[1] Your Honor, that concludes our evidence on this matter. We did in our motion ask for attorneys fees to be awarded to Greyhound for having to bring this motion.
>
> BY THE COURT: I'm not real impressed with that request.
>
> BY MR. CLARK: All right. I'm bringing it to the Court's attention, Your Honor.
>
> BY THE COURT: I don't see how y'all were not a party of interest.
>
> BY MR. CLARK: Your Honor, that concludes our presentation.

¶18. Evidently, based on the above comment by the trial judge ["I don't see how y'all were not a party of interest"], Greyhound chose to address this issue in its brief by discussing, inter alia, whether Greyhound was a "disinterested stakeholder" in this litigation, citing *Amerihost Dev., Inc. v. Bromanco, Inc.*, 786 So.2d 362 (Miss. 2001). In its brief on this issue, Greyhound states, in pertinent part:

> A disinterested stakeholder has been characterized as one who is not 'motivated by self-interest.' *Cogan v. United States,* 659 F.Supp. 353, 353 (S.D. Miss. 1987). In *Cogan*, the defendant insurance company moved for payment of its attorneys' fees out of policy proceeds it had interpleaded into the court registry during a declaratory judgment instituted by its insured. The District Court stated that the defendant was not a disinterested stake holder because filing its interpleader counterclaim had discharged it from conflicting claims to the funds paid into the court registry.
>
> In this case, Greyhound is a disinterested stake holder because it was not attempting to shield itself from other plaintiffs' claims by interpleading funds. There are no conflicting claims to the funds paid into the registry of the court. Greyhound should not have been put to the cost of having to litigate this motion to enforce the binding arbitration award to which Plaintiff agreed, and Greyhound therefore should receive an award of its attorneys' fees out of the funds.

*Amerihost* involved a project owner (Amerihost) commencing an interpleader action due to receiving numerous stop payment notices and bills from subcontractors and materialmen. Amerihost sought attorneys' fees for defending the subcontractors' claims in the interpleader action. In affirming the Court of Appeals' decision to reverse the trial court's award of attorneys' fees and costs to the subcontractors and to remand the issue of attorneys fees to the trial court to make a factual finding as to whether Amerihost was a "disinterested stakeholder" entitled to attorneys' fees, this Court cited *Hartford Acc. & Indem. Co. v. Natchez Inv. Co.*, 161 Miss. 198, 132 So. 535, 539 (1931), which held:

An award of attorneys' fees and costs in favor of the party representing an interpleader action against funds interpled into the court registry is a discretionary matter lying with the trial court.

From the record before us, and the applicable case law, we cannot say that the trial court abused its discretion in denying Greyhound's request that it be awarded attorneys fees and costs from the interpled funds based on its finding that Greyhound was not a disinterested stakeholder.

¶19. Greyhound also relies on the Litigation Accountability Act of 1988 (Miss. Code Ann. §§ 11-55-1 et seq.)(2002),[(2)] and Mississippi Rules of Appellate Procedure (M.R.A.P.) 38 in support of its claim for attorneys' fees and costs; therefore, it is obvious that Greyhound wishes to have Wilson assessed with Greyhound's attorneys' fees and costs incurred at both the trial and appellate level.

¶20. Miss. Code Ann. § 11-55-5(1) states:

(1) Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

Concerning pro se litigants, Miss. Code Ann. § 11-55-5(4) states:

(4) No party, except an attorney licensed to practice law in this state, who is appearing without an attorney shall be assessed attorney's fees unless the court finds that the party clearly knew or reasonably should have known that such party's action, claim or defense or any part of it was without substantial justification.

Miss. Code Ann. § 11-55-3(a) defines the phrase "without substantial justification":

(a) "Without substantial justification," when used with reference to any action, claim, defense, or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court.

¶21. In *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997), we discussed what constituted a frivolous claim:

To determine whether a claim is frivolous pursuant to the statute, this Court looks to the definition of "frivolous" found in M.R.C.P. 11. *Leaf River Forest Products, Inc. v. Deakle*, 661 So.2d 188, 197 (Miss.1995). For purposes of Rule 11, a claim is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *Stevens v. Lake*, 615 So.2d 1177, 1184 (Miss.1993), quoting *Tricon Metals & Services, Inc. v. Topp*, 537 So.2d 1331, 1335 (Miss.1989); *Smith v. Malouf*, 597 So.2d 1299, 1303 (Miss.1992)(applying Rule 11 definition to Litigation Accountability Act context). "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous." *Deakle*, 661 So.2d at 195; *Nichols v. Munn*, 565 So.2d 1132, 1137 (Miss.1990).

¶22. We recently affirmed an award of attorneys' fees against a pro se litigant who had brought suit against a municipal judge, despite advice from the judge's attorney that attorneys' fees would be sought if he pursued the suit. *Wheeler v. Stewart*, 798 So.2d 386 (Miss. 2001). In *Wheeler*, the pro se plaintiff argued that he could not be liable for attorney's fees under the Litigation Accountability Act of 1988 (codified at Miss. Code Ann. §§ 11-55-1 et seq.) We found that the award of attorney's fees to the judge who had been sued was not an abuse of discretion on the part of the trial judge, even though the plaintiff was acting pro se. Wheeler was advised in writing of the public policy concerns of suing a judge and advised to get legal counsel, which he did not do.

¶23. In both *Scruggs* and *Wheeler* we were called upon to determine whether the trial court's award of sanctions pursuant to the Litigation Accountability Act was an abuse of discretion. In the case, sub judice, we are requested by Greyhound to make an award of attorneys' fees on appeal, without any claim of abuse of discretion on the part of the trial court in denying such an award. In fact, Greyhound, in its brief, requests this Court to make "an award of its attorneys' fees out of the [interpled] funds." However, the record reveals that by order dated February 6, 2001, the trial court disbursed the interpled funds to pay Wilson's [former] attorney, medical liens, and court costs, with the balance being paid to Wilson. There certainly are no interpled funds from which Greyhound could now be paid. Additionally, there is no documentation in the record as to the attorneys' fees and costs incurred by Greyhound at the trial level or on appeal, nor evidence as to the reasonableness of such attorneys' fees. Again, from the record before this Court, and the applicable case law, this Court will not attempt for the first time on appeal to make a determination as to whether Greyhound is entitled to sanctions (attorneys' fees and costs) pursuant to the Litigation Accountability Act of 1988.

¶24. Finally, Greyhound cites M.R.A.P. 38 as authority for an award of attorneys' fees and costs. M.R.A.P. 38 states:

> In a civil case to which Miss. Code Ann. Sec. 11-3-23 (1991) does not apply, if the Supreme Court or Court of Appeals shall determine that an appeal is frivolous, it shall award just damages and single or double costs to the appellee.

The comment under Rule 38 states in pertinent part:

> The damages to be awarded may include attorneys' fees and other expenses incurred by an appellee. Interest is treated separately and is governed by Rule 37.

> The rule supplements and does not supplant the statutory 15% penalty now provided by Miss. Code Ann. Sec. 11-3-23 (1991).

According to the clear language of Rule 38, and the comment thereunder, this rule applies only if Miss. Code Ann. § 11-3-23 (2002) does not apply, and Greyhound has offered us no authority as to why the statute would not apply in the case before us today. Accordingly, Greyhound is not entitled to attorneys' fees and expenses pursuant to M.R.A.P. 38.

¶25. However, the Court does have to address the statutory penalty as provided in Miss. Code Ann. § 11-3-23 (2002), which states in pertinent part:

> In case the judgment or decree of the court below be affirmed, or the appellant fails to prosecute his appeal to effect, the supreme court[[3]] shall render judgment against the appellant for damages, at the

rate of fifteen percent (15%) as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum. . . .

Accordingly, by statute, unsuccessful appellants are to be charged with fifteen percent of the money judgment if it is a final judgment of the type specified by the statute and is affirmed unconditionally on appeal. Additionally, where an appellant is awarded a judgment in the trial court but appeals seeking a larger judgment, the previous judgment will be reduced by fifteen percent if the appeal is unsuccessful. In *Theobald v. Nosser*, 784 So.2d 142, 147 (Miss. 2001), we stated:

> Where an appellant is awarded a judgment below but appeals seeking a larger judgment, the previous judgment will be reduced by fifteen percent if the appeal is unsuccessful. *Benson v. Benson*, 749 So.2d 75, 76 (Miss. 1999) (assessing 15% penalty against appellant's $250,000 lump sum alimony payment awarded by court below). Section 11-3-23 is not implicated where an appellee who cross-appeals is unsuccessful, although that appellee is still entitled to collect the penalty if the original judgment is affirmed. *Benson*, 749 So.2d at 76.

While Wilson does not specifically attack the amount of the arbitrator's award via an assignment of error in her brief, it is clear from the tenor of her brief and the transcript of the trial court proceedings, that she was in fact unhappy with the amount of the award, and attempted to justify her refusal of the award check by claiming that she did not understand the arbitration proceedings.

¶26. In her brief before this Court, Wilson states, inter alia:

> As stated earlier in this argument, some factual information in arbitration was not correct, some was omitted, but the court would not allow those corrections/additions to be entered. Had this information been included there most certainly would be a difference in the arbitration conclusion.
>
> . . . .
>
> Subsequent to the circuit court's approving the arbitrator's award, Plaintiff timely filed a letter dated October 20, 2000 of findings of fact to the court. The circuit court refused Plaintiff's request, not even replying. Also, when Plaintiff requested an extension of time to obtain Medal (sic) Records from Keesler Medical Center, Biloxi to affirm that Plaintiff did not have a heart condition as stated in the court's record submitted by Defendant and the arbitrator September 19, 2000 and to add the new discovery evidence of Plaintiff's suffering a broken pelvis and broken sacrum, the circuit court refused Plaintiff's request, stating in its judgment confirming arbitration award and compelling settlement of January 9, 2001, that, this court is not required to render a finding of fact and conclusions of law after the arbitration panel has rendered its decision. The Plaintiff disagrees and avers the circuit clerk (sic) erred by not entering findings of fact and conclusions of law.

Immediately prior to the circuit court evidentiary hearing on November 2, 2000, we find in the record this colloquy between the trial judge and Wilson:

> BY THE COURT: I understand. But after the event, the mediation/arbitration event, I understand the Defendant tendered the proceeds in accordance with that award and you refused to accept them?
>
> BY MS. WILSON: Right. I did not agree with him.

Subsequently, during the same pre-hearing proceedings, Wilson attempted to explain to the trial judge that she had additional health problems since the arbitration hearing. She also questioned why her pre-existing injuries would have had any effect on the amount of the arbitrator's award. Additionally, Wilson unsuccessfully attempted to supplement the record on appeal by offering documents, including medical reports, which were never offered into evidence before the trial court. Also, during the evidentiary hearing, Wilson testified, under oath, as follows:

Q. Did you accept the check that Greyhound tendered to comply with the arbitrator's award?

A. No, sir.

Q. You advised your attorney, Judge Nixon, that you would not accept it and would not go through with it, didn't you?

A. Yes, sir.

Q. And you have seen copies of correspondence where he advised me on behalf of Greyhound that you would not accept it and would not go through with it. Is that correct?

A. Yes, sir. For one thing, it doesn't even contain the amount of medical bills that I have incurred.

During the same hearing, Wilson later admitted under oath that she was dissatisfied with the arbitrator's award.

¶27. In sum, while Wilson attacks the whole arbitration process, it is also obvious, that she was dissatisfied with the amount of the arbitrator's award, which was later confirmed by the trial court. Because Wilson appeals to this Court seeking more money than that allowed by the arbitrator and confirmed by the circuit judge, this Court is constrained, as a matter of law, to assess Wilson with the statutory 15% penalty, which assessment is mandatory, and not discretionary. *Estate of Haynes v. Steele*, 699 So.2d 918, 923-24 (Miss. 1997). While we are sensitive to fair treatment of pro se litigants on appeal, as this Court has stated on a previous occasion concerning another litigant (who sometimes proceeded, pro se), "this was hardly [Wilson's] maiden judicial voyage."[4] We are aware of at least one other case involving Wilson which made it to this Court. *See Wilson v. Allday*, 487 So.2d 793 (Miss. 1986). Based on her prior litigation experience, including appeals to this Court, when Wilson chose to appeal to this Court, seeking at least in part, more money than that awarded by the arbitrator and confirmed by the trial court, she did so at her own peril. Accordingly, pursuant to the statute and case law, Wilson will be assessed the mandatory statutory 15% penalty on the $46,500 judgment in her favor for her unsuccessful appeal to this Court.

¶28. Of course, one additional problem exists. Since neither party appealed with supersedeas, *see* M.R.A.P. 8(a), the judgment has been satisfied. Greyhound had interpled the disputed funds into the registry of the circuit court, and as previously stated herein, the record reveals that upon entry of the final judgment, the trial judge (correctly so) entered an order disbursing the interpled funds. In reality, there is no judgment to reduce by 15% based on Wilson's unsuccessful appeal. Accordingly, judgment must be entered here in favor of Greyhound and against Wilson in the amount of $6,975 (which amount equals 15% of the final judgment of $46,500).

## CONCLUSION

¶29. For these reasons, we find no reversible error on either the direct appeal or cross-appeal. Therefore, we affirm the judgment, and we affirm the trial court's refusal to award Greyhound its attorneys' fees and costs. However, we enforce the fifteen percent (15%) penalty assessed pursuant to Miss. Code Ann. § 11-3-23, by entering judgment here that Greyhound Bus Lines, Inc. shall recover from Romain Powell Wilson the sum of $6,975, for which execution and all other proper process may issue.

¶30. **AFFIRMED AND JUDGMENT FOR STATUTORY PENALTY ENTERED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ, EASLEY AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. John B. Clark is Greyhound's attorney who is being quoted here. This is mentioned so as to avoid any confusion since the arbitrator in this case is Wynn E. Clark, who testified at the evidentiary hearing in circuit court.

2. Greyhound does not rely on Miss. R. Civ. P. 11.

3. Also, the Court of Appeals has the authority to assess the statutory penalty. *State Farm Mut. Auto. Ins. Co. v. Eakins*, 748 So.2d 765, 769 (Miss. 1999).

4. *See Sartain v. White*, 588 So.2d 204, 207 n.2 (Miss. 1991).